## HOWELL v. COMMISSIONERS OF CHATTOOGA COUNTY.

1. The alternative road law contained in the Political Code, when duly adopted for a county, only repeals therein so much of the old road law as is inconsistent with it.　Section 520 of the Political Code is not inconsistent with such alternative road law, and must be complied with before a new public road can be lawfully established in a county wherein such alternative road law is operative.
2. When a new public road has been lawfully established in a county in which such alternative road law has been adopted, only the road hands of the road district in which such road is located can be called out to open it up.

Submitted July 24, — Decided August 14, 1903.

Petition for injunction.    Before Judge Henry.    Chattooga superior court.    May 26, 1903.

*J. M. Bellah,* for plaintiff.    *Wesley Shropshire,* for defendants.

Fish, P. J.    The plaintiff in error brought an equitable petition against the commissioners of roads and revenues of Chattooga county, in which he sought, as an individual, to enjoin them from trying and punishing him, as a road defaulter, for refusing to obey a summons to work upon a new road in that county which had been partially laid out and opened up, and, as a taxpayer, to enjoin them from spending any portion of the road funds of the county in the completion of such road.    At the interlocutory hearing the court refused to grant an injunction, and the petitioner excepted.    The case was submitted to the court upon the petition and answer and an agreement of counsel that only two designated questions, both questions of law, were involved.    The questions raised involved a construction of the alternative road law of 1891 (codified in sections 573 to 583, inclusive, of the Political Code), which had been adopted in Chattooga county and was in force when the proceedings were had to lay out and open the road in question.    One of these questions involved the legality of the action of the board of commissioners of roads and revenues in establishing the road as a public road.    The petitioner contended that the order of the board issued for this purpose was void, in that section 520 of the Political Code, which is a part of the old road law, had not been complied with; while the defendants contended that, as to Chattooga county, the provisions of that section were repealed when the alternative road law was adopted for that county.    That section provides, that, on application for any new road, " the ordinary shall appoint three road commissioners residing as near where such road is intended to pass as possible; and if they find it of public utility, they must proceed to mark it out, and make their report under oath to such [ordinary] that it was laid out and marked conformably to law."    Instead of appointing three road commissioners residing as near the proposed route of the new road as possible, to perform the duties indicated in this section of the Political Code, the commissioners of roads and revenues directed the person whom they had appointed superintendent of roads for the district wherein the new road was sought to

be established to perform such duties, and, upon receiving his report, ordered the new road to be established as a public road. The other question was, whether or not the commissioners of roads and revenues had the authority to order out only the road hands of the district wherein the new road was to be located, to perform the work of opening it up. The contention of the petitioner was that they had not, but that under the alternative road law of 1891 all the road hands of the county should be called out to do this work. The question as to the jurisdiction of a court of equity to enjoin the commissioners of roads and revenues from trying and punishing the petitioner as a road defaulter was not raised in the court below, and has not been discussed here. As the case comes before us, it involves only the two questions above indicated.

1. It is contended by counsel for the defendants in error, that the alternative road law contained in the Political Code "is a complete scheme for the laying out, opening, changing, and discontinuing of public roads, as well as the working of the same," and, "being inconsistent with the old law, the legislative intention is clear that it should supersede and repeal the old law in each county where the same is recommended by the grand jury." We do not think that the alternative road law found in the Political Code, standing alone, is a complete scheme for the purposes above indicated. On the contrary, in our opinion, when considered by itself, it is far from a complete scheme, and the new scheme is only complete when the new law and such portions of the old as are not inconsistent with it are considered together, as forming the alternative road law. If the alternative road law, when adopted for a given county, has the effect of repealing the whole of the old road law, then there would be in such county no way provided for the opening of a new road. For while section 573 of the Political Code, which is the first section taken from the alternative road law of 1891, provides that "the commissioners of roads and revenues, ordinary, or other officer who has charge of county matters of each county of this State, shall have the sole right to lay out, open, or discontinue public roads therein," no means are provided in such alternative road law by which this right can be exercised. One has but to carefully read and consider sections 575, 576, 577, and 578, to ascertain that the means and methods provided in this statute for carrying out its provisions in reference to the public roads

are confined to "working, improving, and repairing the public roads." Section 575, which authorizes the levying of a tax, which, together with the commutation tax, shall be known as the "public road fund" of the county, expressly provides that such fund "shall be used and expended for the purposes of paying the salaries and wages, *and for working, improving, and repairing the public roads*, as herein set forth." "Working, improving, and repairing the public roads" are terms which are only properly applicable to roads which are already in existence. Under section 576, "said authorities are authorized *to work, improve, and repair* the public roads:" 1. By a chain-gang and those who do not pay the commutation tax. 2. "By free hired labor and those who do not pay the commutation tax." 3. "By contracting for the same in such manner as they may deem fit, with private parties, or corporations." 4. By a combination of "any or all of said three above-mentioned methods, or may use any other method or system that may be desired for accomplishing the work necessary *to put and keep the public roads in good condition*." Under section 577, "said authorities may purchase any and all machinery," etc., "necessary and required *for working said roads*." Section 578 provides that "Said authorities shall expend said public road fund in any manner they may deem best *for putting and keeping the roads in thorough condition and repair*." The words which we have italicized in the quotations from these sections show that no means are provided and no method prescribed for the opening of a new road. If the authorities upon whom the sole right of laying out and opening new public roads is conferred are confined to the alternative road law contained in the statute of 1891 for the means and method of exercising this right, they will have a bare right, without any power to exercise it.

Again, the act of 1891 makes no provision whatever for obtaining the land necessary for the opening of a new road, while the old law provides for the condemnation of land for such purpose and the assessment and payment of damages for the land to be taken. Surely the legislature never intended that when the alternative road law should be adopted in a county, section 522, which provides for notice to persons in possession of land which the new road is to pass through, in order "that they may put in their claim for damages or be forever after estopped," and sections 557 to 568,

inclusive, which provide how damages shall be assessed and recovered, should be repealed in such county. It can not be that the legislature intended to give to the authorities named the sole right to open new roads, and at the same time to withhold from them the means and methods of exercising it. A more reasonable view is that the intention of the legislature was that the right conferred should be exercised under the provisions of the old law, which provides the method and the means for the laying out and opening of new roads. As we have seen, section 520 of the Political Code provides for an application to the ordinary for the establishment of a new public road, and then the appointment by him of three road commissioners residing as near where such road is intended to pass as possible, to determine whether the proposed road will be of public utility and if so, to mark it out, and to make their report upon the matter, under oath, to him. Section 521 provides that if the ordinary, on the investigation had, is "willing to grant such road," he shall publish a citation for thirty days at the court-house door, and in a public gazette, if there is one in the county, giving a particular description of the new road, and notifying all persons that on and after a certain day therein named said new road "will be finally granted, if no good cause is shown to the contrary." Under section 528, all the road hands of the district wherein the new road is to be located may be called out to do the work necessary in laying it out and opening it up. There is nothing in the alternative road law of 1891 which takes the place of these provisions, or in any way conflicts with them; and therefore no good reason exists for holding that they are not operative in a county where that law has gone into effect. On the other hand, as we have seen, there is strong reason for holding that they are not repealed by the adoption of such alternative road law.

Counsel for the defendants in error insist that whenever the alternative road law of 1891 is adopted, section 520 of the Political Code is repealed, because under such road law "the sole right to lay out, open, change, or discontinue public roads" is vested in the commissioners of roads and revenues, or the ordinary, of the county. Pol. Code, § 573. We do not think that section 573 conflicts with the old law. Under the old law the sole right to lay out, open, change, or discontinue public roads is vested in the ordinary, or the commissioners of roads and revenues, as the case may

be. Pol. Code, §§ 521, 524. The fact that under section 520, before a new road can be laid out and opened, or an old one altered, the ordinary must appoint three road commissioners to examine into the question of its public utility and mark it out if they find it of public utility, and make a report to him, does not show that the ordinary has not the sole right to lay out and open a public road. It only shows that before he can exercise this right, which is vested solely in him, certain conditions must be complied with. The sole right to open a new public road may well be in the ordinary, and yet he may not be able to exercise it except under prescribed conditions. The appointed road commissioners may report in favor of the opening of a public road, but they have no power to lay it out and open it as a public road. They can report in favor of its public utility and mark it out, but it never will become a public road, laid out and opened, unless the ordinary exercises his exclusive power to make it such. For, notwithstanding the commissioners appointed by the ordinary may report in favor of the public utility of the proposed road and may mark it out, the ordinary is not bound to grant the application for the laying out and opening of the road; he still has the discretion to refuse the application. § 521. And even after the ordinary has himself decided, from the investigation had, that the road should be opened, and damages have been assessed against the county for the land to be taken for the road, " he may revoke the road altogether," if he "is satisfied that such damages transcend the utility of such road." § 566. So we see that section 573, giving to the ordinary, or commissioners of roads and revenues, the sole right to lay out and open public roads, is not at all in conflict with the old law upon the subject.

For the above reasons, we are of opinion that when the alternative road law contained in the Political Code goes into effect in a county, it only repeals, as to that county, so much of the old law as is inconsistent with it; and that as the provisions of the old law in reference to the opening of new public roads are not only consistent with such alternative law, but seem to be necessary for its full operation, they are still in force in a county where the latter law has been adopted. It follows that as section 520 of the Political Code was not complied with, the road in question in this case has not been lawfully laid out and established as a public road.

*Cotting* v. *Culpepper*, 79 *Ga.* 792.　Therefore, the petitioner can not be compelled to work upon it, and the public road fund of the county can not be lawfully used for the purpose of completing it. The injunction prayed for should have been granted.

2.　As this ruling effectually disposes of the case, it is not, perhaps, essential to pass upon the second question.　But it follows, from what we have said above, that the provision of the old law in reference to the calling out of hands to open a new public road is not repealed when the alternative road law of 1891 is adopted.　It is not only not inconsistent with the alternative road law in question, but is the only provision under which laborers can be secured for the doing of such work.　There was, therefore, no merit in the contention that, under this alternative road law, all the road hands of the county should be called out to open up a new public road. On the contrary, only the hands residing in the road district in which the new road is to be located can be lawfully called out for such purpose.　　*Judgment reversed.　All the Justices concur.*