## 7887. WILLIAMS WAGON WORKS *v.* SMALL & SONS.

1. The description, "an iron gray mare seven years old," was legally sufficient, in the contract of conditional sale; and there was sufficient evidence to authorize the finding that the mare in question in the trover suit was "iron gray."
2. No estoppel on the part of the plaintiffs to claim title to the mare in question resulted from the conduct or statement of their employee who, when the person in possession of the mare under the plaintiffs' contract of conditional sale was offering to sell it to a subsequent purchaser, answered an inquiry of the latter as to whether it was "any good" by saying it was a good horse and advising him to buy it.
3. Under the facts in this case there is no merit in the contention that the finding in favor of the plaintiffs' should be set aside on the ground that the evidence does not show that the county in which the conditional sale contract was recorded was the county in which the vendees in the contract resided.

DECIDED MARCH 20, 1917.·

Trover; from city court of Macon—Judge Guerry. October 3, 1916.

A. T. Small & Sons brought trover against the Williams Wagon Works, a corporation, for "one iron gray mare about seven years old." The defendant in its answer denied the material allegations of the petition, and further pleaded as follows: The mare which plaintiffs seek to gain possession of by this suit is a white mare, and does not fit the description in the retainer-of-title note under which plaintiffs are claiming title and right of possession. At the time defendant purchased the white mare which plaintiffs seek to recover, one of the plaintiffs, or their agent, to wit, A. T. Small or G. S. Riley Jr., was present at the sale, or knew of the sale when it was contemplated, and by his encouragement, presence, and manner induced defendant to purchase the mare, realizing that defendant was under the impression that it was free from lien; and the plaintiffs are therefore estopped from asserting title to the mare. The case was tried by the court without a jury, and judgment was rendered in favor of the plaintiffs for $100, the plaintiffs having elected to recover the value of the property in question. The case came to the Court of Appeals on exceptions to the overruling of the defendant's motion for a new trial. The only ground of the motion relied on in the brief of counsel for the plaintiff in error, besides the general ground that the finding of the trial judge was unsupported by evidence, was as follows:

"Movant contends that the following material evidence was illegally admitted by the court, over the objections of movant, to wit: a retainer-title note, dated January 7, 1914, signed by J. W. Rountree & Sons, payable to A. T. Small & Sons at the Fourth National Bank, Macon, Ga., reserving title in an iron gray mare, seven years old, and in an iron gray horse, about eight years old, for $———. Movant objected to the admission of said note in evidence, upon the ground that plaintiffs had not laid the proper foundation for the admission of said note in evidence, and upon the further ground that said note did not describe the property in the possession of the defendant, which the suit was brought to recover. The [objection] was overruled by the court. Movant now contends that the admission of said note in evidence was error, because the burden was on the plaintiffs to show that the note was recorded in the county in which the maker resided, and in the event the property described in the note was located in a county other than the maker's residence, then in such other county in which the property was located. The evidence in the·case does not show that Rountree & Sons, the makers of said note, resided in Bibb county, or that the property described in said note was located in Bibb county." In the brief of evidence the note is described as above, with the addition that it was "dated Macon, Ga.," and was duly recorded in the office of the clerk of Bibb superior court. It does not appear that the objection as to the omission to show the place of residence of the makers of the note was specifically raised at the trial.

*Walter Defore, James C. Estes,* for plaintiff in error, cited: (1) As to description of property: *Farkas* v. *Duncan,* 94 *Ga.* 27, 29; *Stewart* v. *Jaques,* 77 *Ga.* 365; *Nussbaum* v. *Waterman,* 9 *Ga. App.* 56. (2) Estoppel: *Ezzard* v. *Frick,* 76 *Ga.* 512, 516. (3) Record of conditional-sale note: Civil Code (1910), §§ 3259, 3319; *Bond* v. *Brewer,* 96 *Ga.* 443, 445; *Pickard* v. *Garrett,* 141 *Ga.* 831; *Carter* v. *State,* 48 *Ga.* 43.

*Hardeman, Jones, Park & Johnston,* contra, cited: (1) As to description: *First Nat. Bank* v. *Spicer,* 10 *Ga. App.* 503 (1a); *Beaty* v. *Sears,* 132 *Ga.* 516 (1); *Nichols* v. *Hampton,* 46 *Ga.* 253 (3); *Farkas* v. *Duncan,* 94 *Ga.* 27. (2) Estoppel by agent's conduct: *Walton Guano Co.* v. *McCall,* 111 *Ga.* 114; *Keystone &c. Co.* v. *Farmers &c. Co.,* 15 *Ga. App.* 107; *Collins* v. *Crews,* 3

*Ga. App.* 238 (4); *Hamilton* v. *Ga. Railroad,* 78 *Ga.* 328; *Camp* v. *Sou. Bkg. Co.,* 97 *Ga.* 582.

BROYLES, P. J. 1. The main issue on the trial of this case seemed to be whether the mare in question was "white" or "iron gray" when she was sold under the conditional bill of sale, and the determination by the learned trial judge that she was iron gray will not be disturbed, there being ample evidence to support his finding. It seems, from the evidence in the record, that the same horse may be "iron gray" in winter and "flea bitten" or "white" by the following spring. One witness testified: "I would call an iron-gray horse a horse that had already started to turn white." In our opinion, the description of the mare in the bill of sale, to wit, "an iron gray mare seven years old," was legally sufficient. *First National Bank* v. *Spicer,* 10 *Ga. App.* 503 (73 S. E. 753); *Beaty* v. *Sears,* 132 *Ga.* 516 (64 S. E. 321); *Nichols* v. *Hampton,* 46 *Ga.* 253; *Farkas* v. *Duncan,* 94 *Ga.* 27 (20 S. E. 267).

2. Estoppels are not favored by the law, and they must be clearly established. When it is sought to estop the principal by the conduct of an agent it must be affirmatively shown that the agent was acting within the scope of his authority. *Keystone Lubricating Co.* v. *Farmers Oil & Fertilizer. Co.,* 15 *Ga. App.* 107 (82 S. E. 665); *Collins* v. *Crews,* 3 *Ga. App.* 238 (4) (59 S. E. 727); *Hamilton* v. *Georgia Railroad,* 78 *Ga.* 328; *Camp* v. *Southern Banking & Trust Co.,* 97 *Ga.* 582 (25 S. E. 362); *Walton Guano Co.* v. *McCall,* 111 *Ga.* 114 (36 S. E. 469). It is contended that the plaintiffs were estopped from bringing suit to recover the mare, because of the conduct of one Riley, a salesman of the plaintiffs. After the conditional sale by the plaintiffs to Rountree & Sons (which was never completed), and while Rountree had possession of the mare, R. A. Williams, who afterwards bought the animal from Rountree, asked Riley "if she was any good." Williams testified: "He told me to buy her, she was a good horse, and to buy her. He did not say a word about A. T. Small & Sons having a claim on it. . . I did not make an examination of the records." Riley's testimony shows that he was employed by the plaintiffs and that he had sold the mare in question to Rountree. There was no evidence to show the scope of Riley's duties or authority. He did not sell the animal to Williams for Rountree, but Williams bought directly from

Rountree. The conversation between Riley and Williams appears to have been solely upon the question of the worth or value of the property. Riley made no representations whatever to Williams as to the plaintiffs' claim on it, did not purport to be acting for the plaintiffs when he advised Williams to buy it, and no authority for him to act for the plaintiffs was shown. Furthermore, the evidence fails to show that Riley knew that the original purchase-money note of Rountree & Co. had not been paid, or that he was aware that Williams did not know of the conditional sale to Rountree & Co., the bill of sale having been duly recorded in the office of the clerk of the superior court of Bibb county. Nor is there any evidence to negative the idea that Riley, even if he knew that the purchase-money note of Rountree & Co. had not been paid, supposed that Williams would take up the note when he purchased the property. Under such circumstances we do not think that the plaintiffs are estopped by Riley's conversation with Williams.

3. It is contended by the plaintiff in error that the judgment should be reversed upon the purely technical point that the evidence did not affirmatively show that the makers of the title-reservation note resided in Bibb county, where the note was duly recorded in the office of the clerk of the superior court. In order for the reservation of title to be good as against third persons, the vendee being a resident of this State, it is essential that the contract be recorded in the county in which the vendee resides at the time of the execution of the contract. Civil Code of 1910, §§ 3318, 3319, 3259; *Pickard* v. *Garrett,* 141 *Ga.* 831 (82 S. E. 251). There is no contention, nor even the slightest intimation, that as a matter of fact Rountree & Sons, the vendees, did not reside in Bibb county, or that the animal in question was at any time after its purchase in Bibb county carried out of that county. The contract on its face showed that it was executed in Bibb county; the note was payable at a bank in Macon, and the contract was recorded in Bibb county; the record shows that the witnesses (upon the trial in the city court of Macon) referred to Rountree & Sons' place of business as being "down on Third street," and a fair inference from the evidence, and the only inference that could legitimately arise, is that Rountree & Sons resided in Bibb county; and the trial judge, also a resident of Bibb county, sitting by consent with-

out the intervention of a jury, was authorized so to find. If this question had been an issue under the pleadings in the case, or if there were any real doubt as to whether the contract had been recorded in the county where the vendees resided, our ruling would be otherwise, and we would hold, as in the cases cited by the plaintiff in error, that the fact that the instrument was so recorded must be affirmatively shown by direct evidence.

4. The other assignments of error, not being referred to in the brief of counsel for the plaintiff in error, are treated as abandoned. The finding of the judge was amply supported by evidence, no error of law appears, and the overruling of the motion for a new trial was not error.

*Judgment affirmed. Jenkins and Bloodworth, JJ., concur.*