## COMMISSIONERS OF DECATUR COUNTY *v.* CURRY *et al.*

1. The board of commissioners of Decatur County are alone authorized to establish public roads in that county; and the ordinary of that county is without such authority.
2. The method of laying out public roads in that county is that prescribed in the Civil Code of 1910, §§ 640 et seq., which must be followed by the commissioners in establishing public roads.
3. All persons, their overseers or agents, residing on the land through which a public road is proposed to be located, must be notified in writing of the application for the establishment of such road.
4. When such application is signed by a named person, with the letters, " Agt." after his name, without more, such instrument is his individual application for such road.
5. Before one can be bound by the acts of another who assumes to represent him, due proof of the agency must be made; and before one will be estopped by the act of an agent, it must be affirmatively shown that the agent was acting within the scope of his authority.

6. The act of a third person in signing such application would not bind the plaintiffs through whose lands it is proposed to establish a public road, without evidence that they authorized, or afterwards assented to his act in so doing.

7. As the commissioners were proceeding to condemn a certain portion of the plaintiffs' lands, under the Civil Code (1910), § 5206 et seq., and when no notice was given as required by § 642 the trial judge properly granted the interlocutory injunction prayed for.

8. The last ruling makes it unnecessary to consider any of the other errors alleged by the plaintiffs in error.

No. 3070. OCTOBER 10, 1922.

Injunction. Before Judge R. C. Bell. Decatur superior court. January 18, 1922.

Maysie W. Curry, Alice Curry, and Mrs. Norman Blaum filed their petition for injunction against the commissioners of roads and revenues of Decatur County, alleging, that they are owners of land lots 267 and 268 in the fifteenth district of said county; that the commissioners have served upon them a notice of their intention to condemn a right of way for a public road between said lots, said road to be forty feet wide and to be on the land line between said lots; that the commissioners intend to enter upon said lands and to build a road which they claim to be a public road on the land line between said lots, extending across the same, and embracing a strip twenty feet wide on each side of said land-lot line, and extending from the west side of said lots to the Bainbridge and Newton road; that the intention of the commissioners to condemn said land for said public road is illegal, (a) because said road is not a public road within the meaning of the law, the same not having been established or laid out as is provided by sections 640-645 of the Civil Code, and that said road as far as it has been constructed is void as a public road; (b) that the description of said road is so vague and indefinite that it can not properly be laid out, the description being "from at or near the former residence of W. E. Griffin," without showing what former residence, or when the residence of W. E. Griffin was at any point; (c) that the proceedings to condemn are illegal and void, for the reason that the notice of condemnation was not given by the commissioners, the same being signed only by W. G. Harrell, Chairman, and R. G. Hartsfield, Clerk; and (d) that no valid effort has been made to purchase said lands from them or the right of way over the same. The plaintiffs alleged that to permit the condemnation and entering upon their lands

would produce irreparable injury and damage to them; and that they had no adequate remedy at law to prevent the illegal action of the defendants. They prayed that the commissioners be enjoined from proceeding with the said condemnation. The petition was verified by the affidavit of Maysie W. Curry. Attached to the petition was a copy of the notice of the "intention of the Commissioners of Roads and Revenues of Decatur County to condemn for a public road," after paying to plaintiffs all damages that might be fixed by assessors named, a strip across their land, forty feet wide and extending an equal distance on both sides of the land line, between the above lots, "for the purpose of a right of way for a public road leading from at or near the residence of W. E. Griffin due east" along the land line between said lots to the Bainbridge· and Newton road at Red Bluff. This notice further stated that a hearing for the purpose of condemning said land would be had by the assessors on the premises on November 4, 1921, and that J. E. Steadam was thereby appointed as assessor to act in behalf of the commissioners. The plaintiffs were requested in said notice to appoint an assessor to act in their behalf, and were notified that on their failure to do so the ordinary would be . requested to appoint an assessor for them, as provided by law. This notice was dated October 3, 1921, and was signed by " W. G. Harrell, Chairman," and by " R. G. Hartsfield, Clerk."

The commissioners answered and admitted that they were proceeding to condemn the land of the plaintiffs. They denied that the establishment of the public road was illegal; that the condemnation of the plaintiffs' lands would produce irreparable injury and damage; and that the plaintiffs were without adequate remedy at law. The commissioners further alleged that a petition was submitted to them, signed by various citizens, for the establishment of said public road through the lands of the plaintiffs; whereupon they appointed W. W. Harrell, V. C. Long, and W. H. Yeates to view said road, and, if they found the same to be a public utility, to lay it out and mark it and to report their findings under oath. Said reviewers made their sworn report, and the commissioners considered the same· and ordered said road to be advertised as required by law. After being advertised, and· no objection to its final establishment as a public road,

other than that of the petitioners in this case, having been made, the commissioners did pass an order establishing said public road at their regular September term, 1919. The road so established had been traveled by the public from its western end up to the land line of the plaintiffs; and the road is one of public utility and necessity. The commissioners further alleged that T. S. Hawes, who was acting as attorney for the plaintiffs in establishing the road, stated to T. E. Rich, a member of the board of commissioners, that his clients would neither sell nor give the right of way across their lots for this road, and that they would demand damages for the same; for which reason condemnation proceedings were ordered. A copy of the petition for the establishment of the road was attached as an exhibit to the answer. This petition was signed by various persons, among whom appears the signature, " Jas. R. Donalson, Agt." Attached to the answer was a copy of the order of the commissioners appointing the persons to view and report whether said road would be of public utility and convenience. Likewise attached to the answer was a report of the reviewers, in which they found that the public road was a public necessity and convenience. The answer was duly verified by T. E. Rich.

On the hearing the plaintiffs testified by affidavits, that they were the owners of lots 267 and 268 in the fifteenth district of Decatur County; that the county commissioners served them with the notice of condemnation proceedings, that the same was not signed in any other manner than is shown by the signatures of the chairman and clerk of the commissioners; that no valid effort had been made to purchase the lands from them, no offer having been made to them for said lands; that they had no notice of any application from the ordinary for the establishment of said road, or the appointment of the three road commissioners, of their findings, or of any report of said commissioners to the ordinary, that they had seen no citation published by the ordinary; that to build the road between said lots would inflict irreparable damage and expense on them, and injure and damage their land by dividing it and taking from them a portion of cultivated land; and that they would be willing for the establishment of the road on the land line on the south side of their land, where it would not inflict damage to any considerable extent to their land.

T. S. Hawes made affidavit that he was not the attorney for either of the complainants until the filing of this suit; that he can not recall every conversation he had had with Mr. Rich, but he does not recall ever having a conversation about selling part of complainants' land for a road or otherwise; but he stated to T. E. Rich that he did not believe that Miss Maysie Curry would consent for a road to go through the farm.

James R. Donalson made affidavit that he signed the petition addressed to the commissioners of said county to establish a public road between the land of the plaintiffs and the land of H. J. Bruton; that it was specifically explained to the commissioners and other applicants that he would only sign for said road to run between the land of plaintiffs and the land of H. J. Bruton; that he did not sign any petition for a road to run between lots 257 and 258, fifteenth district; that he has received no notice relative to the establishment of a road between said lots; that he has known said land for a great number of years, and knows that to build the road between said lots will seriously damage them and inflict irreparable damage upon the owners; that he has never had any appointment as agent for plaintiffs in this case, except that he looked after the farm and returned the same for taxes; that he never had any appointment that would authorize him to sell or give away any of the property; that he did speak to Miss Maysie Curry about a proposed road, and told her that the road would run between her land and that of H. J. Bruton, that she stated to him that if the road was so established she would not object; and that he never had any authority from either of the complainants to make application for the road.

T. B. Maxwell, ordinary of the county since June, 1898, testified that no petition was ever presented to him relative to the establishment of this public road, and that he had never taken any action on any such petition. W. E. Griffin, by affidavit, testified for the defendants that he was a member of the board of county commissioners in 1918; that he carried a petition to the owners of the land on the line through which a proposed new road was to run from his former residence to Red· Bluff between lots 267 and 268 in the fifteenth district, owned by the plaintiffs, that he saw James R. Donalson and showed him the

petition for the road, who, after reading it, signed it as agent for both lots and generally, but he did not claim that it was his understanding that the road was to run on the south side of said lots on the lot of H. J. Bruton, nor did he make such claim before the commissioners; that deponent is well acquainted with said road for its entire length, that in his opinion the same is much needed by the community, and that it will not damage the two lots of plaintiffs, but he believes will enhance their value.

The defendants introduced the affidavits of other persons, who testified to the public necessity for and convenience of the road; and that the laying out of the same on the land line between the two lots of plaintiffs would not damage the plaintiffs' part of said property, but would be a benefit to them.

The court granted a temporary injunction as prayed; and error was assigned on this judgment, because contrary to law and the evidence.

*Hartsfield & Conger,* for plaintiffs in error.

*T. S. Hawes,* contra.

HINES, J. (After stating the foregoing facts.)

1. It is insisted by counsel for the plaintiffs, that the ordinary of Decatur County alone has authority to lay out a new public road in that county; and that the county commissioners are without power and jurisdiction to do so. We cannot agree with counsel in this contention. It is true that § 640 of the Civil Code of 1910 declares, that, " on application for any new road, the ordinary shall appoint three road commissioners, residing as near where such road is intended to pass as possible; and if they find it of public utility, they must proceed to mark it out, and make their report under oath to such ordinary that it was laid out and marked conformably to law." Where ordinaries of the several counties of this State have jurisdiction of county matters, including the laying out of new public roads, the application for a new public road must be made to the ordinary of the county in which the proposed road is to be established. But where county commissioners are created by law and are given jurisdiction of county matters, embracing the establishment of new public roads, then the application for a new public road must be made to such commissioners.

The constitution of this State provides " The General Assembly

shall have power to provide for the creation of county commissioners in such counties as may require them, and to define their duties." Art. 6, sec. 19, par. 1 (Civil Code, § 6548). By the act of September 26, 1891 (Ga. Laws 1890-1, vol. 2, p. 926), a board of county commissioners was created for this county, and "all the powers and duties of the ordinary of Decatur County, so far as the same relates to roads," were conferred upon this board. Furthermore the alternative road law is of force in this county; and under that law, "The commissioners of roads and revenues, ordinary, or such other officer as has charge of county matters of each county in this State, shall have the sole right to lay out, open, change, or discontinue public roads therein." Civil Code (1910), § 694. Clearly then, in Decatur County, the commissioners have the sole right to lay out and establish new public roads.

But the method of laying out and establishing public roads is that prescribed in the Civil Code, § 640 et seq., with substitution of commissioners for the ordinary in any county where the former have charge of county matters. Counsel for the plaintiffs rely on *Howell* v. *Commissioners,* 118 *Ga.* 635 (45 S. E. 241), as authority for the proposition that the ordinary alone, in a county where county commissioners have charge of its county affairs and the alternative road law has been adopted, has authority to lay out and establish a public highway. That decision held that the alternative road law only repealed "so much of the old road law as is inconsistent with it;" and that section 520 of the then Political Code, now section 640 of the Code of 1910, not being. inconsistent with the alternative road law, must be complied with before a new public road can be lawfully established in a county in which the alternative road law is operative. In that case this court said: "Under the old law the sole right to lay out, open, change or discontinue public roads is vested in the ordinary, or the commissioners of roads and revenues, as the case may be." This language clearly shows that this court never intended to hold, in that decision, that the ordinary, in a county where county commissioners had charge of the affairs of said county, had jurisdiction to establish public roads; but this court only intended to hold that in such a county the commissioners must follow the method pointed out in section 640 et seq. of the present Code, in

laying out public roads. This decision was followed in *Barham* v. *Weems,* 129 *Ga.* 704 (59 S. E. 803), *Hutchinson* v. *Lowndes County,* 131 *Ga.* 637 (62 S. E. 1048), and in *Mitchell County* v. *Hudspeth,* 151 *Ga.* 767 (108 S. E. 305). But in none of these cases has this court decided that the ordinary has sole authority to establish public roads in a county where a board of county commissioners has been created by act of the legislature, and has been given charge of county matters. On the contrary the law is plain, that in such a county the county commissioners alone have the exclusive jurisdiction to lay out and establish public roads; but they must follow the method prescribed in the Civil Code (1910), § 640 et seq.

2. The county commissioners undertook to lay out this road in accordance with the method provided in § 640 et seq. Under this method, " All persons, their overseers or agents, residing on land which such road goes through, except applicants for the road or alteration, must be at the same time notified in writing, personally or by leaving it at their most notorious place of abode," of the application for the establishment of a public road (§ 642). No notice was given to the plaintiffs of the application to lay out this road through their lands; but it is insisted that they were applicants for its establishment, and, therefore, not entitled to notice. They did not sign the application themselves, but it is claimed that it was signed by " Jas. R. Donalson, Agt.," and that he signed the same as agent of the plaintiffs. Here Donalson did not undertake to sign the names of the plaintiffs to the application for the laying out of this road; and by his signature as above he does not even purport to act for the plaintiffs. The application for establishing this road, so signed by Donalson, without more, makes it his individual application. Civil Code (1910), § 3570. Before one can be held bound by acts of another who assumes to represent him, due proof of agency must be made. *Brooke* v. *Lowe,* 122 *Ga.* 358 (50 S. E. 146). When it is sought to estop one by the act of an agent, it must be affirmatively shown that the agent was acting within the scope of his authority. *Williams Wagon Works* v. *Small,* 19 *Ga. App.* 600, 602 (91 S. E. 920). It is asserted by counsel for the plaintiffs in error, in their brief, that Donalson was the agent of the plaintiffs, and that this was so admitted by them. We find no such

admission by the plaintiffs. It does appear from the evidence of Donalson that he was acting for the plaintiffs, in looking after their farm and returning their lands for taxation. Such agency would not authorize him to sign an application for the laying out of a public road through their lands. Besides, it was shown by the plaintiffs that Donalson had no such agency. His act in signing the petition for the establishment of this road would not bind the plaintiffs without evidence that they authorized, or assented to, his act in so doing afterwards. *Fulton County* v. *Amorous,* 89 *Ga.* 615 (16 S. E. 201).

As the commissioners were proceeding to condemn a certain portion of plaintiffs' land under the Civil Code (1910), § 5206 et seq., and where there was no compliance with § 642, which requires that notice of such application be given as therein provided, the trial judge did not err in granting the interlocutory injunction prayed. *Mitchell County* v. *Hudspeth,* 151 *Ga.* 767 (supra).

3. The above ruling makes it unnecessary to consider any of the other questions raised in the record.

*Judgment affirmed. All the Justices concur.*