ANDERSON *et al. v.* LYNCH *et al.*

No. 12684. MAY 11, 1939.

158

*G. B. Tidwell, C. O. Johnson, and H. J. Haas,* for plaintiffs.

*J. C. Savage, Bond Almand,* and *Walter C. Hendrix,* for defendants.

BELL, Justice. (After stating the foregoing facts.)

1. One of the questions for decision is whether the restrictive covenants contained in the deed to Lynch created, or conveyed to the plaintiffs, a property right or interest in the lot of this defendant. It seems that this identical question has not before been presented to this court for determination. Restrictive agreements of this nature are sometimes spoken of as covenants running with the land, and sometimes as creating reciprocal negative easements. Still other terms have been employed. *Hancock* v. *Gumm,* 151 *Ga.* 667, 673 (107 S. E. 872, 16 A. L. R. 1003). Courts of other jurisdictions have taken directly opposite positions on the question stated. After a careful examination of the authorities, we think that the sounder view is that no such interest is conveyed. In United States v. Certain Lands, 112 Fed. 622, it was said that the restrictive conditions as to the use of the lands there involved gave to the claimants, as owners of other lands, no right to go upon or use the lands which were subject to such restrictions, and which the government had condemned for a public use; and that "The damage which may result from the use by the United States will not be the result of the taking of any part of the claimants' lands, or a direct invasion thereof, but the incidental consequence of the lawful and proper exercise of a governmental power." The courts of California have "declined to recognize a building restriction of the character here under consideration as a positive easement or right in the land, but have defined it to be merely a right enforceable in equity as between the parties to the contract, or their successors with notice, and have said that it is in the nature of a negative easement or equitable servitude." Citing Werner *v.* Graham, 181 Cal. 174 (183 Pac. 945) ; Martin *v.* Holm, 197 Cal. 733 (242 Pac. 718) ; Friesen *v.* Glendale, 209 Cal. 524 (288 Pac. 1080) ; Sackett *v.* Los Angeles School Dist., 118 Cal. App. 254 (5 Pac. 2d 23).

In Moses *v.* Hazen, 63 App. D. C. 104 (69 Fed. 2d, 842, 98 A. L. R. 386), property restricted to residential purposes was condemned by the government for school purposes. Owners of other lands in the subdivision sought damages, claiming an interest in the property condemned. Their claims were denied in the trial court, and they appealed. The reviewing court said, "The restrictions on which appellants rely are not truly property rights, but contractual rights, which the government in the exercise of its sovereign power may take without payment of compensation." In City of Houston *v.* Wynne (Tex. Civ. App.), 279 S. W. 916, property which was subject to a restriction to residential use was about to be condemned by the City of Houston for the purpose of constructing an engine house thereon. Owners of other lands sought injunction to restrain the condemnation proceeding, on the ground that plaintiffs had not been made parties and had not been paid for their alleged right in the land sought to be condemned, in advance of the taking. As to the effect of the restrictive covenant as conveying an interest in the land, the court said : "The restrictions conveyed no affirmative rights. They are only such as are usually known as negative rights, by which those entitled might prevent the owners of other lots from using their lots so as to cause damage to lots owned by them, which might be the result of doing those things forbidden by the restrictions. There is nothing in the restrictions stated in the original plan of Eastwood addition, nor in any of the deeds of purchasers of lots therein, which directly or impliedly conveys to such purchasers any interest in any lots purchased by another. Such restrictions are strictly regulations against the purchaser of a lot, by which he obligates himself to all owners of other lots in the addition to refrain from doing those things specially forbidden in the deed under which he holds. Such a deed, we think, can not be reasonably construed as a conveyance to them of any interest in the lots or lands conveyed to another." In reference to the question of parties, it was held that the city was not required to include the plaintiffs as parties to the condemnation proceeding. In that connection, it was said : "Appellees' contention, if carried to its extreme limit, is that if there was an addition to the city, in which there were 10,000 lots, the city would be required to serve the owner or owners of each lot in a suit to condemn any one of such lots for public purposes. Such contention, if established as the law gov-

erning such matters, would be practically to prohibit the city from condemning property so situated for public use; it would at least greatly restrict the rights of the city to condemn property for public purposes. It is apparent that if it could not do so in cases where the owners of lots are 10,000 or more in number, it could not do so when they are 1000 or 1500 in number."

In the present case, the plaintiffs contend, that, even if Fulton County has the right to acquire the lot of Lynch and appropriate it for the purpose of a road or highway, any action by the county to that end should be enjoined until the county has complied with the law as to condemning property, including notice to the plaintiffs with an opportunity to present their claims for damages. It could not be reasonably contended that the county would not have the right to condemn the property for a public road if the road would be of public advantage; and yet if the plaintiffs' other contentions were sustained, it is apparent from the petition that owners of other lots in the subdivision might assert claims in the aggregate of several hundred thousand dollars. It is alleged in the petition that five of these plaintiffs would be damaged in the aggregate sum of $17,500, and that there are two hundred or more other property owners who will be adversely affected and damaged. It could not be correctly said that this small lot which the county is about to use is the common property of all of the owners in the subdivision, and that the total value of the combined interests are to be taken into consideration and compensated before the county might be enabled to use the lot for a public purpose.

As important as the question is, and with all deference to the eminent courts which have held to the contrary, we can not escape the conclusion that the plaintiffs have no property interest in the lot owned by Lynch. The most that can be said is that the restrictive covenants on which they rely are enforceable as between the parties thereto and their successors with notice. They do not convey an interest in the land. For decisions contrary to the conclusion here reached, or tending to the contrary, see Peters v. Buckner, 288 Mo. 618 (232 S. W. 1024, 17 A. L. R. 543); Johnstone v. Detroit &c. Ry. Co., 245 Mich. 65 (222 N. W. 325, 67 A. L. R. 373); Flynn v. New York &c. Ry. Co., 218 N. Y. 140 (112 N. E. 913, Ann. Cas. 1918B, 588); Ladd v. Boston, 151 Mass. 585 (24 N. E. 858, 21 Am. St. R. 481); Hayes v. Waverly &c.

Ry. Co., 51 N. J. Eq. 345 (27 Atl. 648); Town of Stamford v. Vuono, 108 Conn. 359 (143 Atl. 245).

■ Furthermore, it is our opinion that these covenants, if construed as intended to burden the free right of the county to acquire and use the property of Lynch for the purpose of establishing a new public road, would be contrary to public policy and void. Let us suppose, for instance, that the deed to Lynch had contained in terms a restriction against such a use of this lot. Manifestly, the covenant in that case would be contrary to the public interest, and should be held void as against public policy; nor would the result be materially different if the terms and conditions which have been actually expressed should be taken as intended to exclude such use. According to the petition, the covenants are to continue in force for the period of fifty years. The contract will be construed as made for a legal rather than for an illegal purpose, whenever it may be reasonably so interpreted. *Virginia Bridge & Iron Co.* v. *Crafts,* 2 *Ga. App.* 126 (3) (58 S. E. 322). In view of this principle, and the long duration of these covenants, we are of the opinion that the restrictions should be construed as not intended to apply so as to prevent the county authorities from acquiring and using any of the lots for the purpose of a public road, or to prevent any one from selling or dedicating his lot for that purpose. In Doan v. Cleveland Short Line Ry. Co., 92 Ohio St. 461 (112 N. E. 505), the plaintiff sought to recover compensation for the taking of an alleged property right claimed by the plaintiff in the lots of the defendant, a railroad company, a corporation having the right of eminent domain. The plaintiff based her claim upon a restriction of these lots, together with others in the same subdivision, including the lot of the plaintiff, to residential use. The court said: "If the plaintiff is entitled to compensation by way of damages by reason of the use of this property by the railroad company, a right must grow out of the covenant in the deeds of the allotter and the general plan adopted which restricts the use of the property for residence purposes. If such restriction is not to be construed as preventing the use of the property for public purposes, then of course there is no violation on the part of the defendant, and it follows that no recovery can be had. If, on the other hand, it is to be construed as prohibiting the use of the property for any purpose other than that of residences, it would prevent a public use

■

of the lots and thereby defeat the right of eminent domain. No covenant in a deed restricting the real estate to certain uses and preventing other uses can operate to prevent the State, or any body politic or corporate having the authority to exercise the right of eminent domain, from devoting such property to a public use. The right of eminent domain rests upon public necessity, and a contract or covenant or plan of allotment which attempts to prevent the exercise of that right is clearly against public policy, and is therefore illegal and void. Plaintiff's right to compensation, if it exists, must be based upon the restrictive covenant in the deeds and the general plan adopted. To give to plaintiff this right we would be compelled to recognize a right existing under what we hold to be an invalid restriction."

In United States v. Certain Lands, supra, it was said: "While owners may so contract as to control private business, and thereby increase the values of their estates, they are not entitled so to contract as to control the action of the government, or to increase the values of their lands by any expectation or belief that the government will not carry on public works in their vicinity, or that in case it does it will compensate them for the loss due to the defeat of their expectation that it would not. . . Each landowner holds his estate subject to the public necessity for the exercise of the right of eminent domain for public purposes. He can not evade this by any agreement with his neighbors, nor can his neighbors acquire a right from a private individual which imposes a new burden upon the public in the exercise of the right of eminent domain." In Raleigh Court Corporation v. Faucett, 140 Va. 126 (124 S. E. 433), it was held: "The mere fact that the lots of the plaintiff and others were purchased under a map showing the blocks, lots, streets, and alleys, and that certain restrictions were placed upon the purchasers as to the building lines, the value of the houses to be erected on the lots, the classes of persons to whom sales could be made, and other like matters, indicating that the property was to be used for residential purposes, did not estop the defendant from dedicating one or more of the lots shown on said map to use as a public street." From what has been said, we are of the opinion that the restrictions relied on by the plaintiffs do not apply to the situation disclosed by the record, and that the plaintiffs are not entitled to injunction or to damages because of their existence. See also the supporting authorities cited in the preceding division.

■ Even if the plaintiffs might sustain some damage by the establishment of this road, since they have no property interest in the land about to be used for that purpose, any damage sustained by them would be merely consequential or incidental, and they would not be entitled to notice or to insist upon a compliance with the law as to condemning property for such public purpose. County authorities proceeding to lay out a new road through the process of condemnation are to be governed by the law as stated in the Code, chapter 95-2, §§ 95-201 et seq. *Commissioners of Decatur County* v. *Curry,* 154 *Ga.* 378 (2) (114 S. E. 341) ; *Cook* v. *State Highway Board of Georgia,* 162 *Ga.* 84 (4) (132 S. E. 902) ; *Parrish* v. *Glynn County,* 167 *Ga.* 149 (2) (144 S. E. 785). By § 95-203 it is provided that notice shall be given to persons "residing on land through which said road runs."— In *Huff* v. *Donehoo,* 109 *Ga.* 638 (34 S. E. 1035), it was held that the manifest object of this section is to give owners of realty whose property is to be taken a fair opportunity to present their claims for damages, and that "Even if other persons are in any way injuriously affected by the establishment of a new road, the law does not contemplate that they shall have the notice provided for in this section." If the county authorities had the right to condemn this land for the purpose stated, it was their privilege to acquire the land by private contract with the owner or owners, without resorting to the process of condemnation ; and if they had the right to buy, the owner or owners necessarily had the right to sell. *Southern Railway Co.* v. *Combs,* 124 *Ga.* 1004 (2) (53 S. E. 508) ; *Penick* v. *County of Morgan,* 131 *Ga.* 385 (62 S. E. 300) ; *Lee County* v. *Smithville,* 154 *Ga.* 550 (115 S. E. 107). The plaintiffs do not contend that any damage to them has already accrued ; and hence, if they are not entitled to injunction, the action was properly dismissed on general demurrer. See *Parham* v. *Justices, 9 Ga.* 341 (6) ; *Tift* v. *County of Dougherty,* 74 *Ga.* 340 (b). Consequently no question is presented as to whether the plaintiffs may be entitled to incidental or consequential damages, regardless of the applicability of the covenants on which they rely. Since they are not the owners of any interest in the real estate about to be used by the county, they could not enjoin the establishment of the road merely because of a claim for incidental or consequential damages. See *Moore* v. *Atlanta,* 70 *Ga.* 611 (4) ; *Brown* v. *Atlanta Railway & Power Co.,* 113 *Ga.* 462

(4) (39 S. E. 71); *Fleming* v. *Rome,* 130 *Ga.* 383 (61 S. E. 5); *Silvey* v. *Georgia Railway & Electric Co.,* 137 *Ga.* 468 (73 S. E. 629); *Golightly* v. *A. & W. P. R. Co.,* 148 *Ga.* 20 (2) (95 S. E. 683). In such case they would have an adequate remedy at law.

■ In divisions 2 and 3 above we have assumed that the proposed road would be of some advantage to the public. Whether, if not, the case would be different we do not decide. The plaintiffs alleged "that there is no emergency for the construction of said road." The authority of a county to lay out and establish a public road is not limited to an emergency. Nor is it essential that there should be a public necessity; but it is sufficient if the road will be of "public advantage" (Code, § 95-201), or public utility. *Barnard* v. *Durrence,* 22 *Ga. App.* 8 (2) (95 S. E. 372); *Neufville* v. *Robinson,* 43 *Ga. App.* 823, 825 (160 S. E. 552). The petition must be construed most strongly against the plaintiffs; and in the absence of allegations to the contrary, it must be presumed that the road will be of some public utility. In no possible view of the case did the petition state a cause of action, and the court properly sustained the general demurrer and dismissed the suit.

One ground of demurrer complains of a misjoinder of parties and of causes of action. In view of what has been said, it is unnecessary to consider this ground of demurrer.

We should like to state in this connection that the briefs for both sides were thoroughly and logically prepared, and have been of great help to the court in its endeavor to reach a proper decision.

*Judgment affirmed. All the Justices concur.*

ATKINSON, P. J. I concur in the judgment and in the opinion, except that I do not concur in all that is said in the third 'headnote and the corresponding division of the opinion.