CITY OF SHELBYVILLE

*v.*

EDDIE R. KILPATRICK et al.

*(Nashville,* December Term, 1958.)

Opinion filed March 12, 1959.

BAYARD TARPLEY, Shelbyville, for appellant.

JAMES C. BURNS, JR., Shelbyville, for appellees.

Mr. Justice Tomlinson delivered the opinion of the Court.

City of Shelbyville acquired a lot in a residential sub-division thereof known as Clearview Heights Addition. Of proper public record is the plat, etc. of this sub-division. Thereon appears this provision:— "All lots in said addition are restricted to residential purposes only". The City acquired this lot for the erection of a city water tower. Such erection would be contrary to the terms of this restriction. Being doubtful as to its right to construct this tower without liability to pay compensation to the other lot owners in the sub-division, it filed this declaratory judgment bill for the purpose of procuring an adjudication of the question.

Answer to the question is controlled by whether the violation of such restriction is, to that extent, the taking by the City of the private property of the other lot owners. If so, Article 1, Section 21 of our Constitution requires just compensation.

In a very clear opinion, with citation to numerous authorities, pro and con, the Chancellor adjudged such proposed action upon the part of the City to be a taking of the private property of the other lot owners for which

the City must respond in damages, if any sustained. The City has appealed.

The exact question seems never to have been decided in this jurisdiction. As observed by the Chancellor, the decisions of other jurisdictions "are in irreconcilable conflict". Many such decisions, or the annotations thereof, may be found in *Peters v. Buckner,* 288 Mo. 618, 232 S.W. 1024, 17 A.L.R. 543, *et seq.; Johnstone v. Detroit, Grand Haven, etc.,* 245 Mich. 65, 222 N.W. 325, 67 A.L.R. 373, *et seq.; Moses v. Hazen,* 63 App.D.C. 104, 69 F.2d 842, 98 A.L.R. 386, *et seq.; Anderson v. Lynch,* 188 Ga. 154, 3 S.E.2d 85, 122 A.L.R. 1456, *et seq.; Brooklyn Eastern District Terminal v. City of New York,* 2 Cir., 139 F.2d 1007, 152 A.L.R. 296, *et seq.* In addition, the Chancellor cites in support of his conclusion *City of Raleigh v. Edwards,* 235 N.C. 671, 71 S.E.2d 396, and *Meagher v. Appalachian Electric Power Co.,* 195 Va. 138, 77 S.E.2d 461.

In view of the diametrically opposite views by eminent authorities on each side, it will not be amiss, at least in justification of the position taken by this Court, to state briefly the reasons attributed by each for the respective conclusions reached.

A variance appears in the numerous decisions as to just what technical name should be given this restrictive covenant. All the decisions and textwriters, however, appear to agree in the conclusion that the reciprocal servitude owed by each lot to all the others in the subdivision is an equitable easement; that this easement continues, with the exception (so some say) of the sovereign, into whosoever the respective dominant and servient estates may successively pass.

The authorities likewise seem to agree upon the proposition that, as between individuals, the violation of the right created by this easement may be enjoined in equity by the owner of the dominant estate, or such owner may be entitled to compensation for its violation, all because it would be unconscionable to allow the owner of the servient estate to violate with impunity his contract creating this equitable easement.

But when it comes to the question of whether the violation of this restriction by the sovereign in the taking of the servient lot by eminent domain (or by voluntary conveyance to it) for a public purpose those who say that it is not the taking of property within the meaning of the constitutional requirement mentioned place this conclusion upon the ground that the easement is not one which "would permit the physical use or occupation thereof" by the other lot owners in the tract, 122 A.L.R. 1465, nor is it a "true easement, as right of passage or rights to light and air, which are land and subject to condemnation as other interests in land". 63 App.D.C. 104, 69 F.2d 842, 844, 98 A.L.R. 389. Hence, for each reason, no interest in land, they say, is taken.

When it comes to the fact that those from whom the sovereign acquires the servient lot have agreed with the owner of every other lot in that sub-division to the easement in question, the above jurisdictions, or some of them, say that an individual cannot impose upon the sovereign "the burden of compensating him for damage resulting from that public use which does not directly invade his land". 17 A.L.R. 555, and that the parties may not "in private contract create for themselves an estate in land not known to our law and thus entitle them

to compensation where no such right existed before.'' 122 A.L.R. 1465.

Others upon that side go so far as to say that since the sovereign cannot be restricted in its use of the land for a public use, short of a nuisance, at least, it follows that an intention between the contracting parties not to include the sovereign will be implied. 188 Ga. 154, 3 S.E.2d 85, 122 A.L.R. 1462.

The contrary view is that when all the lots in a subdivision are subject to this restrictive easement, and one is taken for a public use, the owners of the other lots for whose benefit the restriction is imposed are entitled to compensation, if damaged, because such an easement constitutes an interest in the land upon which it is imposed.

The Michigan case of *Johnstone v. Detroit, Grand Haven, etc.,* 245 Mich. 65, 222 N.W. 325, 327, 67 A.L.R. 373, in taking this last stated view of the matter, discusses the question in quite some detail. In response to the argument that it is against public policy to apply such restrictive easements to the sovereign in the taking of land for a public use the Court pointed out that the police power is restrictive, only limiting the owner's use of property to public safety, etc. ''but never extends to depriving him of it for public benefit''.

The Court recognized the fact that building restrictions ''did not constitute easements known to the common law''. But then called attention to the fact that the ''easement of light, air, and access in property abutting on a public street is not a common-law easement, but its impairment by public use in the street is a taking of property.''

*Johnstone v. Detroit, etc., supra,* asserts that its holding "is supported by the weight of authority". The first annotation following the report of the case, after calling attention to the annotation in 17 A.L.R., *supra,* makes this statement:—"The few cases decided since the earlier annotation uphold the rule that compensation must be made where the taking of property under eminent domain violates building restrictions on the land adjacent thereto".

The reasoning of the cases holding that compensation must be made where the taking of property under eminent domain violates building restrictions placed thereon for the benefit of every other lot in the sub-division is, in the opinion of this Court, more consistent with the realities of the situation. Each of the respective owners of the respective lots entered into this restrictive agreement because each regarded it as something which added to the value of his or her own lot. Our case of *Ridley v. Haiman,* 164 Tenn. 239, 258, 47 S.W.2d 750, 756, recognizes it to be a fact that such a restriction is "an interest or right created by the deed itself", meaning an interest or right in the servient lot.

Certainly it is not within the spirit of our eminent domain law that such interest created by the deed may be taken away from its owner without compensation, if that owner is damaged. Not being within the spirit of the law, it ought not to be so held, unless required by the letter of the law. This Court finds nothing in the letter of our eminent domain law forbidding compensation to the owner under such circumstances. Nor is there anything in Article 1, Section 21, exhibiting an intention that

this right in the servient lot may be taken by the sovereign without paying just compensation.

It does not seem accurate to hold that the owner of the right to restrict the use of the servient lot to a certain use for the benefit of the dominant lot is not a property right in that servient lot. The only right, broadly speaking, that any owner of any real estate has in land is the right to use it. So, it would seem to follow that the ownership of the right to restrict the use of a given parcel of land to a certain use is, to that extent, a property right in that lot, for which, when deprived thereof, he should be compensated. Or, as better stated in *Johnstone v. Detrot, etc. supra*,—''as the right to restrict the use of real estate is an invasion of ownership, it would seem logical that it is done by virtue of a right or interest in such real estate.''

For the reasons stated, the Court is of the opinion that the decree of the Chancellor should be affirmed with costs adjudged against the appellant.