134 So.2d 700 (1961)
Field V. GREMILLION et al., Plaintiffs-Appellees,
v.
RAPIDES PARISH SCHOOL BOARD, Defendant-Appellant.
No. 459.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1961.
Rehearing Denied November 29, 1961.
F. Jean Pharis, A. M. D'Angelo, Jules L. Davidson, Jr., by A. M. D'Angelo, Alexandria, for defendant-appellant.
Downs & Gremillion, by Field V. Gremillion, Alexandria, for plaintiffs-appellees.
En Banc.
TATE, Judge.
This is a suit for specific performance of an agreement to buy certain realty. The defendant school board appeals from judgment ordering it to comply with its agreement to purchase a tract of land from the plaintiffs. At issue is whether the *701 plaintiffs have a merchantable title to such property.
The defendant school board refused to comply with its contract to purchase the real estate because a legal opinion showed that the tract's three lots were subject to a 1916 covenant in their chain of title providing that such lots be used only for residential purposes. The owners of three other lots of the subdivision, in favor of which this restrictive covenant ran, would not waive any rights that they may have by reason of the contractual restriction.
There is no substantial question, in our opinion, as to the right of the school board to acquire the property and to use it for school purposes, despite the restriction in its title that it be used only for residential purposes. "The first law of society being that the general interest shall be preferred to that of individuals, every individual who possesses under the protection of the laws, any particular property, is tacitly subjected to the obligation of yielding it to the community, wherever it becomes necessary for the general use," LSA-Civil Code, Article 2626.
The school board, however, contends that nevertheless the title is not merchantable if, after acquisition of the property for school purposes, the board will also be required to pay additional compensation to the adjoining lot owners because of the violation of the covenant restricting the use of the acquired property to residential purposes only. The school board points out that its contractual agreement was to purchase the property for $20,500 and that such additional liability to the adjoining lot owners would enlarge the ultimate price which it would be forced to pay beyond that agreed upon.
Thus the substantial question before us is whether the owner of the land in favor of which there is a covenant restricting adjoining land to residential uses only, has, in this covenant in his favor, a property right which must be compensated when such adjoining land is taken by an educational agency of the state to be used for school purposes. Otherwise stated, the question is whether the school board's use of the property for school purposes, in violation of an otherwise binding restriction that such property be used only for residential purposes, constitutes a taking or damaging of a property right of the other lot owners of the subdivision so as to entitle them to compensation for such taking or damaging of their vested right. Louisiana Constitution Article I, Section 2; Article IV, Section 15, LSA.
Both counsel concede that this is a question of first impression in Louisiana and that there are two diametrically opposite holdings in the other American jurisdictions in which the question has arisen. (By the pleadings and the argument of counsel, it is indicated that the defendant board is willing to accept title to the property, which is necessary to expansion of its school system, should the courts decide in the present suit, between only it and the sellers, that the covenant does not restrict the use of the land to residential purposes nor enlarge the liability of the public body purchasing it by creating an additional liability to the other lot owners of the subdivision for violation of the restrictive covenant in their favor; even though, strictly speaking, the title to the property might be considered nonmerchantable as suggestive of litigation in the absence of any settled Louisiana rule on this controverted question.)
The principal question before uswhether the owners of neighboring property must be compensated for the violation of building restrictions in their favor affecting the property actually acquired for public purposesand the conflicting American decisions concerning it are comprehensively discussed at 2 Nichols on Eminent Domain (3rd ed., 1950) Section 5.73, and by the Annotation, "Building restriction as property right for taking which compensation must be made", 17 A.L.R. 554, as supplemented at 67 A.L.R. 385 and at 122 A.L.R. 1464. See also 29 C.J.S. Eminent Domain § 104, at *702 p. 910; 20 Corpus Juris Eminent Domain Section 130 at pp. 654-655; 18 Am.Jur. "Eminent Domain" Section 157 at p. 788.
As cited by these text sources, the decisions of ten jurisdictions (Connecticut, New Jersey, New York, North Carolina, Massachusetts, Michigan, Missouri, Tennessee, Virginia, and Wisconsin) support the conclusion that the neighboring property owners must be compensated for the taking or damaging of the property right represented by the building restriction in their favor, which affects the land acquired for a public use; while the decisions of eight jurisdictions (California, Colorado, the District of Columbia, Georgia, Florida, Ohio, Texas, and West Virginia) support the contrary conclusion. Incidentally, as both lines of authority indicate, the principles applicable to legal disposition of the question are the same whether the property acquired for a public use is taken by the public agency through judicial condemnation or is purchased by the public agency at private sale.
Simply stated, the former line of decisions holds that a building restriction in favor of neighboring land is a property right vested in the owner of such land, which must be compensated when violated by a public use inconsistent with the restriction. The neighboring owner may enjoin or secure damages for a violation of the restriction by private persons; thus, likewise, he is constitutionally entitled to compensation for the taking or damaging by a public agency of his property right represented by the covenant, the restrictive effect of which is destroyed by the use for governmental purposes inconsistent with the restrictions of the covenant, insofar as the property acquired by the agency is concerned (even though the neighboring owner may not enjoin the public agency's use for a governmental purpose of the property affected by the restriction, since all property is constitutionally subject to acquisition for public use when necessary).
An excellent and clear statement of this view is set forth, with a summary of the conflicting authorities, in the opinion of the Supreme Court of Tennessee in City of Shelbyville v. Kilpatrick, Tenn. 322 S.W. 2d 203 (1959).
We do not, however, adopt this view. We prefer to follow the reasoning of the other jurisdictions which hold, to the contrary, that restrictive covenants affecting property acquired for governmental purposes do not, as against a governmental agency acquiring the affected property for a public use, constitute a property right of the owners of the untaken lands in favor of which the covenants run.
This is so, because any restriction that property cannot be used for governmental purposes nor be acquired by a public agency for public use is unenforceable ab initio. As some jurisdictions hold, such a restriction is void as against public policy or is deemed excepted from the intendment of the parties at the time a covenant is created restricting the use of property in some particulars.
Prior to creation of the restrictive covenant, the state was legally entitled to acquire the property for school purposes upon the payment of just and adequate compensation to the owner of the land. The state's right to acquire such land for school purposes cannot be restricted by a private contract between private parties, to which the state is not a party; nor can such a private contract impose upon the state liability beyond that allowed in the absence of the contract. In the sense that such restrictive covenants cannot affect the state's acquiring or use of the land for public purposes, they do not constitute, as against the sovereign, any property right which must be compensated for the violation or damaging thereof by the use of the property for a governmental purpose.
Among decisions so holding, after discussion of the conflicting authorities, are: State ex rel. Wells v. City of Dunbar, 142 W.Va. 332, 95 S.E.2d 457 (1956); Smith v. Clifton Sanitation District, 134 Colo. 116, 300 P.2d 548 (1956); Board of Public Instruction *703 of Dade County v. Town of Bay Harbor, Fla., 81 So.2d 637 (1955); Anderson v. Lynch, 188 Ga. 154, 3 S.E.2d 85, 122 A.L.R. 1456 (1939).
Some of these decisions also note that in many instances, such as for example in cases of the large modern subdivisions containing many hundreds or even thousands of lot owners, an insuperable burden to exercise of the governmental power of eminent domain would be created by any requirement that all other lot owners be impleaded or compensated before any public improvement be undertaken upon any individual lot of the entire tract subject to restrictive covenants. Such covenants could so be used deliberately to defeat the acquisition of property for governmental purposes; see, e. g., Smith v. Clifton Sanitation District, above-cited, where in fact many property owners in the neighborhood joined in a restrictive covenant, in a deliberate attempt to defeat the acquisition of land in the area for a public use after negotiations for such acquisition had been commenced. As the Supreme Court of Florida noted, while such practical "considerations are not controlling, [yet] where there is respectable authority both ways, they would be compelling and forceful factors in the determination of which way the scales of reason and justice incline. In such cases the courts should consider practical matters and problems as well as theories," Board of Public Instruction of Dade County v. Town of Bay Harbor, above-cited, at 81 So.2d 644.
We therefore hold that, although an agency of the state cannot take private property without compensating the owner thereof, nevertheless private owners by private contract cannot restrict the right of the state to use the land for a public purpose, nor can they by such private contract between themselves enlarge the liability of the state for the taking for governmental use of such land. The state's constitutional duty to provide adequate educational facilities and its constitutional right as sovereign to acquire land for such public purposes cannot be restricted or hampered by the provisions of a private contract to which the state is not a party. Insofar as the sovereign is concerned, the neighboring owners of the subdivision can acquire by a private contract to which the sovereign was not a party no greater right than they possess in the absence of such a contract.
For the foregoing reasons, the judgment of the District Court ordering specific performance of the contract to purchase the property for school use is affirmed.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.