T.C. Memo. 2020-112

UNITED STATES TAX COURT

BELAIR WOODS, LLC, EFFINGHAM MANAGERS, LLC,
TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19493-17.                    Filed July 22, 2020.

David M. Wooldridge, Ronald Levitt, Gregory P. Rhodes, and Michelle A.
Levin, for petitioner.

Christopher D. Bradley, Jason P. Oppenheim, John W. Sheffield III, and
John T. Arthur, for respondent.

MEMORANDUM OPINION

LAUBER, Judge: This is one of many cases in this Court involving chari-
table contribution deductions for conservation easements. Currently before the

**[\*2]** Court is a motion for partial summary judgment filed by the Internal Revenue Service (IRS or respondent). Respondent contends that the charitable contribution deduction claimed by Belair Woods, LLC (Belair), was properly disallowed because the conservation purpose underlying the easement was not "protected in perpetuity" as section 170(h)(5)(A) requires.[1] That is so, respondent urges, because the easement deed contravenes the requirement that the grantee receive, in the event the easement is extinguished, a proportionate share of the proceeds upon any subsequent sale of the property. See sec. 1.170A-14(g)(6), Income Tax Regs.[2]

The questions presented by respondent's motion are substantially similar to those decided adversely to the taxpayers in PBBM-Rose Hill, Ltd. v. Commission-

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code) in effect for the year at issue, all Rule references are to the Tax Court Rules of Practice and Procedure, and all paragraph references are to the paragraphs of the deed of conservation easement at issue. We round monetary amounts to the nearest dollar.

[2]This is the third opinion we have issued in this case. In Belair Woods, LLC v. Commissioner, T.C. Memo. 2018-159, we held that Belair failed to satisfy the requirement that it attach a fully-completed "appraisal summary" to the return on which its deduction was claimed. See sec. 1.170A-13(c)(2)(i)(B), Income Tax Regs. However, we reserved for trial the question whether Belair could excuse this failure by showing that it "[wa]s due to reasonable cause and not to willful neglect." See sec. 170(f)(11)(A)(ii)(II). In Belair Woods, LLC v. Commissioner, 154 T.C. ___ (Jan. 6, 2020), we addressed, and resolved mostly in respondent's favor, the parties' dispute as to whether the IRS had obtained timely supervisory approval, as required by section 6751(b)(1), for the accuracy-related penalties it determined in this case.

[*3] er, 900 F.3d 193 (5th Cir. 2018); Oakbrook Land Holdings, LLC v. Commissioner, 154 T.C. __ (May 12, 2020); Coal Prop. Holdings, LLC v. Commissioner, 153 T.C. 126 (2019); and Carroll v. Commissioner, 146 T.C. 196 (2016). But petitioner also proffers in support of its position several arguments that we have not previously addressed. Adhering to the analyses in our prior opinions, and rejecting the additional arguments petitioner advances, we will grant respondent's motion.

## Background

There is no dispute as to the following facts, which are drawn from the petition, the parties' motion papers, and the attached declarations and exhibits. Belair is a Georgia limited liability company (LLC) that has operated at all times as a partnership for Federal income tax purposes. Belair had its principal place of business in Georgia when it filed its petition.

In December 2008 Belair acquired, by contribution from HRH Investments, LLC (HRH), a 145-acre tract of land in Effingham County, Georgia. On December 30, 2009, Belair donated a conservation easement over 141 acres of that tract to the Georgia Land Trust (GLT or grantee), a "qualified organization" for pur-

[*4] poses of section 170(h)(3). We will refer to this 141-acre tract as the conserved area or the Property. The deed of easement was recorded the same day.[3]

The easement deed recites several conservation purposes, including promotion of governmental policies set forth in Georgia's Uniform Conservation Easement Act and related laws. See Ga. Code Ann. secs. 44-10 et seq., 48-7-29.12 (2019). The deed generally prohibits commercial or residential development. But it reserves certain rights to Belair as grantor, including the rights to conduct commercial agricultural and timber-harvesting activities within the conserved area. Belair also reserved the right to construct within the conserved area "a limited number of new improvements." These improvements could include the development of "woods roads" for permitted agricultural and forestry activities, construction of an irrigation system capable of irrigating up to 20 acres, maintenance of existing roads, construction of two ponds for recreational pur-

---

[3]HRH or its affiliates contributed other tracts of land in Effingham County to other LLCs, and Effingham Managers, LLC, petitioner in this case, served as tax matters partner for most of these LLCs. Each LLC granted a conservation easement to GLT. The IRS has challenged the charitable contribution deductions claimed by the LLCs for those other donations. See Englewood Place, LLC v. Commissioner, T.C. Memo. 2020-105; Maple Landing, LLC v. Commissioner, T.C. Memo. 2020-104; Riverside Place, LLC v. Commissioner, T.C. Memo. 2020-103; Village at Effingham, LLC v. Commissioner, T.C. Memo. 2020-102; Oakhill Woods, LLC v. Commissioner, T.C. Memo. 2020-24; Cottonwood Place, LLC v. Commissioner, T.C. Dkt. No. 14076-17; Red Oak Estates, LLC v. Commissioner, T.C. Dkt. No. 13659-17.

[*5] poses, and the construction of residential driveways and utilities (including water, septic, and power lines) to serve a pair of adjacent two-acre residential parcels owned by Belair.

The deed recognizes the possibility that the easement might be extinguished at some future date. In the event the property were sold following judicial extinguishment of the easement, paragraph 17 provided that "[t]he amount of the proceeds to which Grantee shall be entitled, after the satisfaction of any and all prior claims, shall be determined, unless otherwise provided by Georgia law at the time, in accordance with the Proceeds paragraph." Paragraph 19, captioned "Proceeds," specified that the deed granted the Conservancy "a real property interest, immediately vested in Grantee," and that this vested property interest entitled the Conservancy to receive, in the event of an extinguishment, a share of any future proceeds determined

> by multiplying the fair market value of the Property unencumbered by this Conservation Easement (minus any increase in value after the date of this Conservation Easement attributable to improvements) by the ratio of the value of the Conservation Easement at the time of this conveyance to the value of the Property at the time of this conveyance without deduction for the value of the Conservation Easement.

Belair timely filed Form 1065, U.S. Return of Partnership Income, for its taxable year beginning November 11 and ending December 31, 2009. On that

[*6] return it claimed a charitable contribution deduction of $4,778,000 for its donation of the easement. Belair relied on an appraisal by David R. Roberts, who used the "before and after method" to determine the easement's fair market value (FMV).[4]

The IRS selected Belair's 2009 return for examination. On June 19, 2017, the IRS issued Belair a timely notice of final partnership administrative adjustment (FPAA) disallowing the charitable contribution deduction in full because Belair had not shown that the requirements of section 170 were met. The FPAA alternatively determined that, if any deduction were allowable, Belair had not established that the FMV of the easement exceeded zero. The FPAA determined a 40% "gross valuation misstatement" penalty under section 6662(h) and (in the alternative) a 20% accuracy-related penalty under other provisions of section 6662(a).

Petitioner timely petitioned this Court for readjustment of the partnership items. See sec. 6226(f). On October 11, 2018, respondent filed a motion for par-

---

[4]Mr. Roberts' appraisal states that the 145-acre tract was part of a larger 1,447-acre tract acquired by HRH in August 2007 for $3,818,200, or $2,639 per acre. Assuming that to be true, Mr. Roberts' valuation supposed that the Property had appreciated in value by nearly 1,300% during the Great Recession. Mr. Roberts was the original appraiser in many other conservation easement cases that this Court has decided. See, e.g., Plateau Holdings, LLC v. Commissioner, T.C. Memo. 2020-93; Woodland Prop. Holdings, LLC v. Commissioner, T.C. Memo. 2020-55; Oakhill Woods, LLC v. Commissioner, T.C. Memo. 2020-24.

**[\*7]** tial summary judgment addressed to the "judicial extinguishment" issue.
Petitioner timely responded to that motion.

## Discussion

### A.  Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly,
unnecessary, and time-consuming trials.  See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001).  We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision
may be rendered as a matter of law.  Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002).  Petitioner has alleged no genuine dispute of material fact affecting the question that respondent has proposed for summary adjudication.  We conclude that this question may appropriately be adjudicated summarily.

### B.  Judicial Extinguishment

The Code generally restricts a taxpayer's charitable contribution deduction
for the donation of "an interest in property which consists of less than the taxpayer's entire interest in such property."  Sec. 170(f)(3)(A).  But there is an exception
for a "qualified conservation contribution."  Sec. 170(f)(3)(B)(iii), (h)(1).  For the
donation of an easement to be a "qualified conservation contribution," the conservation purpose must be "protected in perpetuity."  Sec. 170(h)(5)(A).

**[\*8]**  The regulations set forth detailed rules for determining whether this "protected in perpetuity" requirement is met.  Of importance here are the rules governing the mandatory division of proceeds in the event the property is sold following a judicial extinguishment of the easement.  See sec. 1.170A-14(g)(6), Income Tax Regs.  The regulations recognize that "a subsequent unexpected change in the conditions surrounding the property that is the subject of a donation * * * can make impossible or impractical the continued use of the property for conservation purposes."  Id. subdiv. (i).  Despite that possibility, "the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished by judicial proceeding" and the easement deed ensures that the charitable donee, following sale of the property, will receive a proportionate share of the proceeds and use those proceeds consistently with the conservation purposes underlying the original gift.  Ibid.  In effect, the "perpetuity" requirement is deemed satisfied because the sale proceeds replace the easement as an asset deployed by the donee "exclusively for conservation purposes."  Sec. 170(h)(5)(A).

The judicial extinguishment provisions of the deed in this case are substantially similar to those that we considered in Coal Prop. Holdings, 153 T.C. at 130-131.  Following our reasoning in that case, we conclude that Belair's deed fails to satisfy the "protected in perpetuity" requirement for two reasons.

**[\*9]**  First, the regulatory fraction used in the deed to determine the grantee's proportionate share of post-extinguishment proceeds is applied, not to the full sale proceeds--an amount presumably equivalent to the FMV of the property at the time of sale--but to the proceeds "minus any increase in value after the date of this Conservation Easement attributable to improvements." Thus, the grantee's share is improperly reduced on account of (i) appreciation in the value of improvements existing when the easement was granted plus (ii) the FMV of any improvements that the donor or its successors subsequently make to the property. By reducing the grantee's share in this way, the deed violates the regulatory requirement that the donee receive, in the event the property is sold following extinguishment of the easement, a share of proceeds that is "at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift, bears to the value of the property as a whole at that time." See sec. 1.170A-14(g)(6)(ii), Income Tax Regs.

As we have noted previously, the requirements of this regulation "are strictly construed." Carroll, 146 T.C. at 212. Because the grantee in this case "is not absolutely entitled to a proportionate share of * * * [the] proceeds" upon a post-extinguishment sale of the Property, the conservation purpose underlying the contribution is not "protected in perpetuity." Coal Prop. Holdings, LLC, 153 T.C.

**[\*10]** at 127, 139; accord, Plateau Holdings, LLC v. Commissioner, T.C. Memo. 2020-93, at \*23; Oakbrook Land Holdings, LLC v. Commissioner, T.C. Memo. 2020-54. The U.S. Court of Appeals for the Fifth Circuit has likewise sustained the disallowance of a charitable contribution deduction where the judicial extinguishment provision of an easement deed included a carve-out for donor improvements similar to that here. See PBBM-Rose Hill, 900 F.3d at 208.

The easement deed here has a second problem, which was also present in Coal Prop. Holdings. The grantee's tentative share of the proceeds, as determined under paragraph 19 of the deed, is adjusted further by paragraph 17. It provides that the grantee's share will be determined under the Proceeds paragraph, but only "after the satisfaction of any and all prior claims." Prior claims against the sale proceeds might be held by various creditors of Belair or its successors.

It is not necessarily unreasonable for a deed to provide that prior claims may be paid from sale proceeds. What is unreasonable is the requirement that all prior claims be paid out of the grantee's share of the proceeds, even if those claims represent liabilities of Belair or its successors. See Coal Prop. Holdings, LLC, 153 T.C. at 145 n.5. Because the grantee's share of the proceeds is improperly reduced by carve-outs both for donor improvements and for claims against the donor, the

**[\*11]** deed's judicial extinguishment provisions do not satisfy the regulatory requirements.

If the regulation is interpreted, as we have interpreted it, to make Belair ineligible for a charitable contribution deduction, Belair contends that the regulation is invalid. It urges that section 1.170A-14(g)(6), Income Tax Regs., is an "arbitrary and capricious" rule promulgated in violation of the Administrative Procedure Act. And it contends that the regulation is substantively invalid under the test set forth in Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984). We comprehensively addressed and rejected both of these arguments in a recent Court-reviewed Opinion. See Oakbrook Land Holdings, LLC v. Commissioner, 154 T.C. at __ (slip op. at 15-33). We need not repeat that analysis here.[5]

_____

[5]Petitioner draws our attention to Priv. Ltr. Rul. 200836014 (Sept. 5, 2008) (PLR), in which the IRS found unobjectionable an easement deed with a judicial extinguishment clause resembling that here. Petitioner contends that respondent's interpretation of the regulation as set forth in that PLR is binding on respondent under Auer v. Robbins, 519 U.S. 452, 461 (1997). Petitioner's argument ignores the fact that determinations embodied in a PLR "may not be used or cited as precedent." Sec. 6110(k)(3). The taxpayer in PBBM-Rose Hill brought the same PLR to the Court of Appeals' attention, but that court paid no heed to it, finding the regulation unambiguous on its face. See PBBM-Rose Hill, Ltd. v. Commissioner, 900 F.3d 193, 207-208 (5th Cir. 2018). We have done the same. See Coal Prop. Holdings, 153 T.C. at 144; Hewitt v. Commissioner, T.C. Memo. 2020-89, at \*20-\*21 (concluding that the PLR "is neither persuasive nor relevant").

**[*12] C.    Petitioner's Additional Arguments**

    1.    Estoppel

Petitioner contends that judicial estoppel should prevent the IRS from disallowing Belair's deduction because, in an unrelated case, the Government stipulated that a deed with an analogous extinguishment clause satisfied the regulations. Petitioner directs our attention to DMB Realco LLC v. United States, Civil No. 16-1585-NVW (D. Ariz. filed May 23, 2016), where the IRS had disallowed a $26.44 million charitable contribution deduction for a conservation easement.  The parties filed a "joint stipulation of facts for purposes of summary judgment" in which they stipulated that the easement deed, originally conveyed in 2006, satisfied the "judicial extinguishment" regulation after the deed was amended in 2012. The Government concurrently filed a motion for summary judgment contending that the original, unamended deed controlled as to whether the taxpayer was entitled to a deduction.  Before the court could hear argument on that motion, the parties reached a settlement that allowed the taxpayer a deduction of $6.61 million.

Judicial estoppel applies in the Tax Court.  See Huddleston v. Commissioner, 100 T.C. 17, 28 (1993).  Generally, three non-exhaustive factors guide our analysis when asked to invoke this doctrine.  We consider whether:  (1) "a party's later position * * * [is] 'clearly inconsistent' with its earlier position," (2) "the

[*13] party has succeeded in persuading a court to accept that party's earlier position," and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage." New Hampshire v. Maine, 532 U.S. 742, 750-751 (2001). Where (as here) a party seeks to invoke judicial estoppel on the basis of a prior proceeding to which it was not a party, the Court of Appeals for the Eleventh Circuit--to which an appeal of this case would appear to lie--instructs trial courts to apply a stricter, two-factor test. That test asks whether: "(1) the party took an inconsistent position under oath in a separate proceeding, and (2) the inconsistent positions were 'calculated to make a mockery of the judicial system.'" Slater v. U.S. Steel Corp., 871 F.3d 1174, 1181 (11th Cir. 2017) (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002)).

None of these conditions is met here. The Government's "earlier position" was simply a concession, and it evidently made that concession for the purpose of facilitating summary judgment on another theory that it deemed meritorious. Parties to litigation make concessions for all sorts of reasons unrelated to the underlying merits, and the Government's action in the Arizona case was not "clearly inconsistent" with respondent's current position. Ibid. (quoting New Hampshire, 532 U.S. at 750-751). Nor did the Government "persuad[e] a court to accept * * * [its] earlier position." Ibid. Because the Government made a tactical stipulation

**[*14]** and ultimately settled the case, the District Court had no occasion either to accept or to reject the Government's position.  See Kaplan v. Commissioner, 795 F.3d 808, 813 (8th Cir. 2015), aff'g T.C. Memo. 2014-43.  Finally, petitioner has not shown how the Government's concession in the earlier case would allow it to derive "an unfair advantage," see New Hampshire, 532 U.S. at 751, much less that it was "calculated to make a mockery of the judicial system," see Slater, 871 F.3d at 1181; Smith Lake, LLC v. Commissioner, T.C. Memo. 2020-107.

> 2.    Supposed Irrelevance of Improvements

The regulation requires that the grantee must be entitled to a proportionate share of proceeds from a subsequent sale, exchange, or involuntary conversion "of the subject property."  Sec. 1.170A-14(g)(6)(ii), Income Tax Regs.  The "subject property" means "the property that is the subject of a donation under this paragraph," as to which the surrounding conditions have unexpectedly changed.  Id. subdiv. (i).  Petitioner urges that the regulation does not require the grantee to receive any proceeds attributable to improvements because improvements are not part of "the property that is the subject of a donation under this paragraph."  Ibid. Rather, petitioner contends that the "property that is the subject of [the] donation" is simply "the underlying land."

**[*15]** We disagree. The donation of a conservation easement gives rise to a deduction only if it imposes "a restriction (granted in perpetuity) on the use which may be made of the real property." Sec. 170(h)(2)(C). The "donation under this paragraph" thus consists of the use restrictions that are imposed in perpetuity by the easement deed. See sec. 1.170A-14(g)(6)(i), Income Tax Regs. The restrictions imposed by the easement deed necessarily apply, not only to the land, but also to any improvements made by the grantor pursuant to its reserved rights.

Here, the deed reserves to Belair the right to conduct forestry and agricultural activities, but it restricts the scale of those activities and the manner in which they may be performed. Para. 4(a) and (b). The deed reserves to Belair the right to "construct a limited number of new improvements," but restricts that right in various ways. The deed specifies the permissible location of residential driveways and utility lines, including water, septic, and power lines. Para. 4(e)(i). Utility lines must be buried if possible "so as to minimize interference with the scenic nature" of the conserved area. Ibid. The installation of any irrigation system must not "interfere with the Conservation Values protected herein." Para. 4(e)(ii). "Utility and driveway placement and any construction performed shall be done in such a manner as to minimize damage to the environment and the Conservation Values." Para. 4(e)(iii). "Roads, the driveway and utilities shall not be placed in

**[\*16]** locations which significantly interfere with the Conservation Values." Ibid.
Any ponds constructed may not exceed four acres in toto, may not "impact the
ecological integrity of any wetlands [or] creek," and are conditioned on the
Conservancy's approval as to location. Para. 4(f).

In short, the deed's restrictions are imposed on the entirety of the conserved
area--both the land and any improvements Belair makes to it. The "property that is
the subject of * * * [the] donation" thus includes both the land and its improve-
ments. Sec. 1.170A-14(g)(6)(i), Income Tax Regs.; see Hewitt v. Commissioner,
T.C. Memo. 2020-89, at \*18 ("The subject property refers to the property that is
sold that generates the proceeds after the easement is extinguished."). The pro-
ceeds that the Conservancy must receive upon a post-extinguishment sale of the
subject property thus include the Conservancy's proportionate share of proceeds
attributable to improvements.[6]

---

[6]This conclusion is consistent with a commonsense understanding of the
regulatory language referring to proceeds from sale "of the subject property." Sec.
1.170A-14(g)(6)(ii), Income Tax Regs. Owners of real estate do not typically sell
roads, driveways, ponds, or buried utility lines separately from the real estate on
which those improvements are situated. If the property is sold, the sale proceeds
are necessarily attributable both to the land and to the attached improvements.

**[\*17]** 3.    Supposed Worthlessness of Improvements

Petitioner next asserts that any future improvements would not meaningfully increase the value of the subject property.  For that reason, petitioner contends that the deed's carve-out for donor improvements would not cause the Conservancy to receive less than its full proportionate share of post-extinguishment proceeds.  In essence, petitioner urges that this is a case of "no harm, no foul."

Again we disagree.  To start, petitioner's contention rests uneasily with the terms of the deed.  Paragraph 4(a) reserves to Belair the right to "construct a limited number of new improvements" and enumerates the types of improvements that Belair may make.  Paragraph 19 explicitly subtracts from the sale proceeds, and reserves to Belair, "any increase in value after the date of this Conservation Easement attributable to improvements."  It is hard to understand why the draftsperson would have included this language if Belair had believed that its anticipated improvements would not enhance the property's value.  And it seems entirely plausible that they would do so:  Roads, driveways, irrigation systems, water pipes, electric cables, and septic systems have value intrinsically and as furnishing essential services to Belair's adjoining residential parcels.

Deductions are a matter of legislative grace, and a taxpayer must prove its entitlement to the deductions it claims.  INDOPCO, Inc. v. Commissioner, 503

**[\*18]** U.S. 79, 84 (1992). To be entitled to a deduction for the donation of a conservation easement, the donor must ensure that the donation "gives rise to a property right, immediately vested in the donee organization," to receive a proportionate share of the proceeds of any post-extinguishment sale. Sec. 1.170A-14(g)(6)(ii), Income Tax Regs. The deed here does not meet this test because it reserves to Belair the right to make "improvements" of obvious value and to retain all proceeds attributable to those improvements.[7]

### 4.    Georgia Law

The regulation entitles the grantee to a proportionate share of post-extinguishment proceeds "unless state law provides that the donor is entitled to the full proceeds from the conversion without regard to the terms of the prior perpetual conservation restriction." Ibid. Petitioner contends that Georgia law (the law applicable here) would preclude the Conservancy from receiving any proceeds in a condemnation proceeding involving the property. According to petitioner, a con-

---

[7]Citing Thornton v. Dep't of Transp., 620 S.E.2d 621, 624 (Ga. Ct. App. 2005), petitioner urges that "the cost to build a driveway on a property does not reflect the property's fair market value." It is true that money spent to improve property does not necessarily produce a dollar-for-dollar increase in the FMV of the property. But it does not follow that a combination of roads, driveways, irrigation systems, water pipes, electric cables, and septic systems would have no effect on the FMV of the conserved area. In any event, petitioner can only speculate about the future value of the specific improvements it has retained the right to make but has not yet made.

**[*19]** servation easement is not compensable to the grantee in a Georgia condemnation proceeding.

Petitioner directs our attention to Anderson v. Lynch, 3 S.E. 2d 85 (Ga. 1939). That case involved contiguous parcels of land, each subject to a covenant restricting it to residential use. The city condemned one of the lots for use as a public road, a nonresidential use. The court held that the owners of the neighboring lots had no compensable interest in the condemnation proceeding, reasoning that they held no property interest in the lot sought to be condemned. Id. at 89. "The most that can be said," the court concluded, "is that the restrictive covenants * * * are enforceable as between the parties thereto and their successors with notice. They do not convey an interest in the land." Ibid.

Petitioner's argument is unpersuasive for at least three reasons. First, petitioner cites no Georgia authority that extends the principles of Anderson to conservation easements held by charitable organizations. Well after Anderson was decided, Georgia enacted (with a few minor alterations) the Uniform Conservation Easement Act. See Ga. Code Ann. secs. 44-10 et seq. Georgia's public policy now appears to favor enforcement of conservation easements; indeed, the deed in this case recites several of these policies. See supra p. 4.

[*20] Second, the court in <u>Anderson</u> reasoned that the plaintiffs owned no property interest in the land sought to be condemned. Here, by contrast, the deed of easement explicitly grants the Conservancy "a real property interest, immediately vested in Grantee." Para. 19; <u>see</u> sec. 1.170A-14(g)(6)(ii), Income Tax Regs. (requiring donor to agree that the easement "gives rise to a property right, immediately vested in the donee organization").

Georgia's takings clause now makes compensable "every species of property, real and personal, corporeal and incorporeal." <u>Bowers v. Fulton Cty.</u>, 146 S.E. 2d 884, 889 (Ga. 1966). Moreover, whereas the plaintiffs' claims in <u>Anderson</u> were speculative, the deed here provides an explicit method for determining the value of the Conservancy's real property interest. <u>See</u> <u>Palm Beach Cty. v. Cove Club Inv'rs Ltd.</u>, 734 So. 2d 379, 385-387 (Fla. 1999) (distinguishing <u>Anderson</u> and related cases where a condemnation claimant had a contractual right to compensation that was "far from speculative," reducing the risk of "an endless number of claims based on unknown and incalculable depreciation of value to land").

Finally, as petitioner recognizes, <u>Anderson</u> addressed the narrow situation where property was "converted to public use through a condemnation." The extinguishment regulation, by contrast, applies broadly wherever an "unexpected change in the conditions surrounding the property * * * make[s] impossible or

**[\*21]** impractical * * * [its] continued use * * * for conservation purposes." Sec. 1.170A-14(g)(6)(i), Income Tax Regs. Even if <u>Anderson</u> were thought to deny the Conservancy any proceeds in the event of condemnation, petitioner has supplied no Georgia authority for the proposition that the same result would follow if the easement were judicially extinguished in other ways or for other reasons, e.g., because the property had become blighted or the conservation purpose had otherwise become impossible to accomplish. <u>See</u> <u>Carroll</u>, 146 T.C. at 219 (reasoning similarly regarding a Maryland condemnation provision). For all these reasons, we hold that <u>Anderson</u> does not suffice to establish that Georgia law would entitle Belair, following a judicial extinguishment of the easement, "to the full proceeds from the conversion without regard to the terms of the * * * perpetual conservation restriction." <u>See</u> sec. 1.170A-14(g)(6)(ii), Income Tax Regs.

To implement the foregoing,

<u>An order will be issued granting respondent's motion for partial summary judgment</u>.