This is an appeal from a judgment entered in favor of Bill Shealy and other residents of the Meadowbrook subdivision of Dothan ("Shealy"), and against the Dothan Area Chamber of Commerce, Inc. ("Chamber").
In 1969 the City of Dothan ("City"), through condemnation proceedings, obtained the property that is the subject of this dispute. The City acquired the property so that it could erect an electrical power substation to service the surrounding area of the City. After its completion, the substation occupied only a portion of the property obtained by the City's exercise of eminent domain. In 1985 the City Commission passed a resolution authorizing a lease of the remainder of the property to the Chamber. That lease was for 25 years, with a right to extend the lease for 5 additional 10-year periods. As consideration, the City was to receive $1,000 per year. There was also evidence that, aside from the annual rent payments, the City would benefit from the Chamber's plan to include a visitors' welcome and information center for the City within the building it proposes to build on the property. Also, the City would retain any improvements left on the property at the end of the lease term. The estimated costs of the structure to be built on the property is $600,000. In 1988, Shealy filed a complaint, alleging that the lease was void. One of the defects alleged by Shealy was that the City had failed to authorize the lease by the passage of an ordinance, as required by Ala. Code 1975, § 11-47-21.
After Shealy filed his complaint, the City Commission passed Ordinance No. 88-251, authorizing a lease of the property, and a new lease to the Chamber was then executed with terms identical to those contained in the 1985 lease. Subsequent to the execution of the second lease, trial was had on Shealy's complaint. An advisory jury was empaneled, and the trial judge entered a judgment that was consistent with the *Page 517 
jury's findings. That judgment held that the lease did not comply with § 94 of the Alabama Constitution 1901, as amended by Amendment No. 112, because the City was not receiving "fair market rent" for the property; that the lease did not comply with § 11-47-21; and that the lease violated restrictive covenants in effect in the subdivision. The Chamber appealed, challenging the judgment and those findings of fact, and maintaining that the trial judge improperly denied a motion that he recuse himself from the trial of this case.
 Constitutionality of the Lease
Section 94 of the Alabama Constitution, as amended by Amendment No. 112, reads:
 "Counties, municipalities and other political subdivisions not to grant public money or lend credit to individuals or corporations; alienation of public parks, playgrounds, recreational facilities and housing projects by political subdivisions and public bodies.
 "The legislature shall not have power to authorize any county, city, town, or other subdivision of this state to lend its credit, or to grant public money or thing of value in aid of, or to any individual, association, or corporation whatsoever, or to become a stockholder in any such corporation, association, or company, by issuing bonds or otherwise. It is provided, however, that the legislature may enact general, special, or local laws authorizing political subdivisions and public bodies to alienate, with or without a valuable consideration, public parks and playgrounds, or other public recreational facilities and public housing projects, conditional upon the approval of a majority of the duly qualified electors of the county, city, town, or other subdivision affected thereby, voting at an election held for such purpose."
The trial court held that this provision and "other legal requirements" require that a municipality receive "fair market rent" when it leases real property. It cited two Informal Attorney General Opinions, # 88-00123 (January 15, 1988) and #88-00323 (June 10, 1988), as support for its interpretation of § 94, as amended by Amendment No. 112. We disagree with that interpretation. In addition, this Court has upheld both leases and conveyances of property by municipalities without requiring the municipality to prove that it has received fair market value for the property. O'Grady v. City of Hoover,519 So.2d 1292 (Ala. 1987); Williams v. Water Works Sanitary SewerBoard of Montgomery, 261 Ala. 460, 74 So.2d 814 (1954).
This Court has expressed its reluctance to examine the adequacy of consideration in similar contracts, including sales of land:
 "When a contract of a public body is an ordinary commercial contract, with benefits flowing to both parties and a consideration on both sides, it is not a lending of credit by the public body. Otherwise, Sections 93 and 94, Constitution 1901, as amended, would prohibit any public body from entering into any contract whereunder the other party gained any benefits whatever"
Rogers v. City of Mobile, 277 Ala. 261, 278, 169 So.2d 282, 298
(1964). We are equally hesitant to examine the adequacy of the consideration received by the City in this case, leaving that determination to the judgment of the City's duly elected officials. After reviewing the record, this Court has found no evidence of a constitutional violation. Therefore, the judgment of the trial court is in error on this point.
 Compliance with § 11-47-21
The trial court also held that the lease was invalid because the City had failed to comply with Ala. Code 1975, § 11-47-21. That statute is reproduced below:
 "The governing body of any city or town in this state may, by ordinance to be entered on its minutes, lease any of its real property not needed for public or municipal purposes, and a lease made by the mayor in accordance with such ordinance shall be binding for the term specified in the lease, not to exceed a period of 99 years; provided, that in counties having a population of not less than 225,000 and not more than 400,000 inhabitants *Page 518 
according to the most recent federal decennial census, such limitation of the term to a period of 99 years shall not apply to any oil, gas or mineral lease made in accordance with such ordinance." (Emphasis added.)
The trial court held that this statute requires a finding by the City that the property to be leased is not needed for public purposes and held that a declaration in Ordinance No. 88-251 did not satisfy that requirement. That declaration is reproduced, in relevant part, below:
 "Section 3. That it has been determined that the property . . . is hereby declared to be no longer needed for public or municipal purposes."
This Court does not agree that that declaration was not sufficient to comply with § 11-47-21. In Vestavia Hills Boardof Education v. Utz, 530 So.2d 1378 (Ala. 1988), this Court invalidated a land transfer by the city of Vestavia Hills, in part because the City failed to comply with § 11-47-20, a statute dealing with the sale of land by municipalities which also requires the city to declare that the property to be conveyed is no longer needed for public purposes. In VestaviaHills, supra, there was no attempt by the city to comply with the statute, whereas in the instant case the City explicitly stated that the property was no longer needed for public or municipal purposes. A similar declaration was held to comply with § 11-47-20 in O'Rorke v. City of Homewood, 286 Ala. 99,237 So.2d 487 (1970). Neither § 11-47-20 nor § 11-47-21
requires that the ordinance contain a detailed recitation of facts supporting the statement that the land is no longer used for public purposes.
Shealy also argues that Ordinance No. 88-251 violated §11-47-21 because the evidence showed that there were utility poles on the property to be leased. He contends that this constitutes a public use and would prevent the City from leasing the property. Although there are utility poles on the subject property, the property was originally condemned to give the City land on which to erect a substation. That purpose has been continuously carried out since 1969, and the City has retained possession of the property where the substation is located. The lease to the Chamber would in no way interfere with the City's use of the property, and there is no justification for restricting the use of more than one acre of real estate simply because it has utility poles on it.
In examining leases of this type, this Court must presume that the City's governing officials acted in good faith when it is clear on the face of the ordinance that those officials have approved the lease. City of Mobile v. Board of Water SewerCommissioners, 258 Ala. 669, 64 So.2d 824 (1953); Newberry v.City of Andalusia, 257 Ala. 49, 57 So.2d 629 (1952). Section 3 of Ordinance No. 88-251 complied with Ala. Code 1975, §11-47-21, and the trial court also erred in its judgment as to this issue.
 Application of Restrictive Covenants
The trial court also held that the proposed use of the property by the Chamber would violate existing restrictive covenants in effect in the Meadowbrook subdivision. However, when a municipality acquires land that is subject to an enforceable covenant, the condemning authority acquires the land free from the burden of the covenant. 5 Powell on RealProperty, § 679(4) (1987). That rule was adopted by this Court in Burma Hills Development Co. v. Marr, 285 Ala. 141, 145,229 So.2d 776, 779 (1969):
 " 'It has been argued that such restrictions were not intended to apply as against public improvements; — that, since all property is held subject to the power of eminent domain the rights of the condemnor are impliedly excepted from the operation of the restrictive covenant.
 " 'It has further been held that such restrictions could not possibly inhibit the action of the sovereign because any such attempt would be void as against public policy since they constitute an attempt to prohibit the exercise of the sovereign power of eminent domain.' " *Page 519 
(Quoting 2 Nichols on Eminent Domain, § 5.73) (1985).
In this case the City has not deeded the property to the Chamber, and the lease is a proper exercise of the authority given the City under § 11-47-21. Therefore, any attempt to enforce the covenants, under the facts of this case, would be an intrusion on the City's exercise of its statutory power. A different result might follow if the City had sold the property to the Chamber. However, since the City has retained title to the property, we need not speculate on that possibility. For the reasons stated above, the trial court erred on this issue also.
After reviewing the record, this Court finds the 1988 lease between the City and the Chamber to be valid. Therefore, the Chamber's contention that the trial judge improperly denied its motion that he recuse himself need not be addressed.
The judgment of the trial court is reversed, and this case is remanded with instructions to the trial court to reinstate the lease and vacate its order enjoining the Chamber from building its proposed office building on the subject property.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.