[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 4, 2011
JOHN LEY
CLERK

_____

No. 10-15716

_____

D. C. Docket No. 1:10-cv-01275-RLV

ROYAL CAPITAL DEVELOPMENT, LLC,

Plaintiff-Appellant,

versus

MARYLAND CASUALTY COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 4, 2011)

Before DUBINA, Chief Judge, CARNES, Circuit Judge, and SANDS,* District
Judge.

DUBINA, Chief Judge:

_____

*Honorable W. Louis Sands, United States District Judge for the Middle District of Georgia,
sitting by designation.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO  ARTICLE VI, SECTION VI, PARAGRAPH IV, OF THE GEORGIA CONSTITUTION.

TO THE SUPREME COURT OF GEORGIA AND THE HONORABLE JUSTICES THEREOF:

This case involves a dispute over the proper interpretation under Georgia law of a real property insurance contract between Plaintiff-Appellant Royal Capital Development, LLC ("Royal Capital") and Defendant-Appellee Maryland Casualty Company. The insurance policy provides coverage for "direct physical loss of or damage to" a building Royal Capital owns in the Buckhead area of Atlanta. The contract specifies Maryland Casualty's obligations under a section entitled "Loss Payment": "In the event of loss or damage" to the property, Maryland Casualty "will either: (a) Pay the value of lost or damaged property; [or] (b) Pay the cost of repairing or replacing the lost or damaged property . . . ." [Insurance Policy Coverage Form, R. 1-2 (Exh. 1) at 20.]

Royal Capital contends that the insurance coverage extends to compensation for the building's diminution in value resulting from stigma due to the building's

2

physical damage, even after all repairs have been made. It cites *State Farm Mutual Automobile Insurance Company v. Mabry*, 556 S.E.2d 114 (Ga. 2001), as stating a long-established analogous rule for car insurance contracts and argues that the rationale extends to insurance contracts for buildings. Maryland Casualty acknowledges the *Mabry* rule, but contends that it does not apply here because the insurance contract covers a building, not an automobile, and the language excludes coverage for diminution-of-value damages.

Thus, the single question presented in this appeal is whether the Georgia courts would hold that the *Mabry* rule extends to standard insurance contracts for buildings. Because this is an important unsettled question of state law, and there is no controlling precedent from the Georgia state courts, we certify the question to the Supreme Court of Georgia.

## I. BACKGROUND

The relevant facts are not in dispute. Royal Capital owns The Capital Building, an eight-story commercial building in the Buckhead area of Atlanta. In 2003, Royal Capital purchased the disputed insurance policy from Maryland Casualty to insure the building.

In late January and February of 2008, construction activity on an adjacent property caused physical damage to The Capital Building. Royal Capital submitted

3

a timely claim under the policy to Maryland Casualty, seeking both the cost of repairs and the post-repair diminution in value resulting from the damage. Maryland Casualty acknowledged that the damage to the building was a covered cause of loss under the policy and paid $1,132,072.96 to compensate Royal Capital for the estimated costs of repairing the damage. However, Maryland Casualty refused to acknowledge any responsibility to compensate Royal Capital for the alleged diminution in value of the property.

Royal Capital filed a one-count Complaint in the Superior Court of Fulton County, Georgia; Maryland Casualty removed the case to the United States District Court for the Northern District of Georgia pursuant to diversity jurisdiction under 28 U.S.C. § 1332. Moving on an expedited basis and deferring discovery on the actual extent of the building's loss of value, the parties filed cross-motions for summary judgment on the narrow issue of whether the insurance contract allowed recovery of diminution-of-value damages in addition to the costs of repair under Georgia law. The district court found that diminution-of-value damages were not available under the contract and granted Maryland Casualty's motion for summary judgment.

## II. ANALYSIS

The sole question in this case is whether Royal Capital's insurance contract with Maryland Casualty requires the insurer to pay for the alleged "diminution in value" of the insured building in addition to the costs of repair. Under Georgia law, an insurance contract that promises to "pay for loss to" a vehicle covers the costs of repairing the vehicle to its pre-accident condition and the diminution in value of the vehicle caused by the accident. *Mabry*, 556 S.E.2d at 118–22. The rationale behind this rule is that an insurer promises foremost to insure the other party against "loss"—and "loss" includes both the actual physical damages and any loss in value of the property. This is true even if the insurance contract gives the insurer the option of settling a loss by paying either the cash value of the vehicle pre-accident or the cost of repair or replacement. *Id.* at 119–21. *Mabry* followed 75 years of Georgia case law in its holding. *See Dependable Ins. Co. v. Gibbs*, 127 S.E.2d 454 (Ga. 1962); *State Farm Mut. Auto. Ins. Co. v. Smith*, 167 S.E.2d 610 (Ga. Ct. App. 1969); *Simmons v. State Farm Mut. Auto. Ins. Co.*, 143 S.E.2d 55 (Ga. Ct. App. 1965); *U.S. Fid. & Guar. Co. v. Corbett*, 134 S.E. 336 (Ga. Ct. App. 1926).

The district court had little trouble concluding that *Mabry* had no effect on this case, noting that it "dealt exclusively with a consumer automobile policy."

5

[Order Granting Defendant's Motion for Summary Judgment, R. 37 at 7 n.3.] On the other hand, a different federal judge in the Northern District of Georgia found that an insurance contract insuring a commercial building, with almost identical terms to the one here, did include coverage for both repair and diminution-of-value damages because the rationale behind the *Mabry* rule did not justify a distinction for real estate. *NUCO Invs., Inc. v. Hartford Fire Ins. Co.*, No. 1:02-CV-1622-CAP, 2005 WL 3307089 (N.D. Ga. Dec. 5, 2005) (unpublished).[1]

Maryland Casualty offers strong arguments in support of the district court's decision that the *Mabry* rule does not extend to the disputed insurance contract here. First, Maryland Casualty contends that buildings generally do not suffer from diminution in value as the result of damage and repairs the way that automobiles do from accidents. *See Mabry*, 556 S.E.2d at 119 (describing the "common perception that a wrecked vehicle is worth less simply because it has been wrecked"). Second, the types of parties involved in negotiations over an insurance policy for commercial real estate are likely to be sophisticated business

---

[1] In *NUCO*, an insurance policy for a building insured against "all risk of direct physical loss of or damage to property described herein except as hereinafter excluded." *Id.* at *2. Under a heading entitled "Valuation" the policy stated that the "basis of adjustment" for a claim for damages to a building would be "replacement cost at the time and place of loss, if replaced, otherwise Actual Cash Value." *Id.* at *2–*3. Upon electing to be compensated under the replacement cost option, the insured party sought coverage for the diminution in value of the building as a result of damage. The court held that notwithstanding the either-or language of the contract, diminution-of-value damages were available. *Id.* at *4.

entities with proper representatives and counsel. Third, Maryland Casualty correctly points out that no Georgia court has ever found that an insurance contract like the one in question obliges the insurer to pay for the diminution in value of a building as a result of physical damage. This is significant considering that the rule for automobile insurance contracts has been in force for over eighty years. *See Corbett*, 134 S.E. at 338.

Additionally, Maryland Casualty argues that this case is unlike *Mabry* due to the different language in this insurance policy. In *Mabry*, the policy included a section labeled "Section VII – Physical Damage Coverage." [R. 17-8 (Exh. E) at 19.] In this section, State Farm promised to pay for "loss to [the insured's] car." The policy defines "loss" in natural language: "each direct and accidental loss of or damage to" the vehicle. [*Id.*] Maryland Casualty contends that this broad grant of coverage contrasts with the much narrower language in the policy here, which covered "direct *physical* loss . . . or damage." [R. 1-2 (Exh. 1) at 1 (emphasis added).]

Finally, Maryland Casualty claims that the unambiguous language of the insurance policy forecloses the relief Royal Capital seeks. The policy gives the insurer the option of paying either "the value of lost or damaged property [or] the cost of repairing or replacing the lost or damaged property." On its face, the policy

7

does not allow the insured to seek compensation for both the value lost and the costs of repair.

On the other hand, there are arguments in favor of extending the *Mabry* rule to insurance policies for commercial buildings. First, as Royal Capital notes, it is a close question whether the damages it claims are covered by the policy and thus the presumption should be in favor of coverage. *See Corbett*, 134 S.E. at 338 ("Policies of insurance [are to] be liberally construed in favor of the object to be accomplished, and the conditions and provisions of contracts of insurance [should] be strictly construed against the insurer who prepares such contracts.") (internal quotation marks omitted).

Second, Royal Capital claims that, just like cars, buildings can suffer diminution in value after being damaged and repaired. During oral argument, Royal Capital's counsel claimed that it is prepared to present expert testimony from certified appraisers that The Capital Building has suffered a loss of market value due to the stigma of having been damaged in the past.

Third, Maryland Casualty's argument that the term "physical loss" in this contract distinguishes it from *Mabry* is less compelling considering that the term "loss" in the *Mabry* contract came under a section entitled "Physical Damages Coverages." [R. 17-8 (Exh. E) at 19.] It is not a stretch to conclude that diminution

of value due to physical damage and subsequent repair is a type of "physical damage" under Georgia law.

Finally, Maryland Casualty's claim that the plain language of the contract bars relief weakens in light of the fact that the language used in the *Mabry* insurance policy was similarly clear in restricting the insured's damages to "the lower of: the actual cash value; or the cost of repair or replacement." [R. 17-8 (Exh. E) at 19.] Both the *Mabry* policy and the one here include parallel Limit of Liability and Loss Payment provisions which worked in tandem to limit the insurer's obligations on the policy. Thus, Royal Capital argues that so long as *Mabry* is the law in Georgia and Georgia's courts have not issued a definitive statement on whether its rationale extends to insurance policies for commercial buildings, we should not say that Royal Capital's policy unambiguously bars its claim.

Because this case involves an unsettled question of Georgia law, we would rather certify the question of the proper interpretation of the parties' insurance contract in light of *Mabry* to the Georgia Supreme Court than speculate as to how the Georgia courts would resolve the issue. As we have observed in the past, "[w]here there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary

*Erie* 'guesses' and to offer the state court the opportunity to interpret or change existing law." *Colonial Props., Inc. v. Vogue Cleaners, Inc.*, 77 F.3d 384, 387 (11th Cir. 1996) (footnote omitted) (quoting *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916–17 (11th Cir. 1995)). We underscore, however, the rule that certification of state law questions is a matter of discretion. *See Lehman Bros. v. Schein*, 416 U.S. 386, 390–91, 94 S. Ct. 1741, 1744 (1974) ("We do not suggest that where there is doubt as to local law and where the certification procedure is available, resort to it is obligatory. . . . Its use in a given case rests in the sound discretion of the federal court.") (footnote omitted).

While this circuit traditionally has been less reluctant than others to certify questions of state law,[2] it nonetheless has been our practice to do so with restraint and only after the consideration of a number of factors:

> [C]ertification should never be automatic or unthinking. 'We use much judgment, restraint and discretion in certifying.' . . . In determining whether to exercise our discretion in favor of certification, we consider many factors. The most important are the closeness of the question and the existence of sufficient sources of state law . . . to allow a principled rather than conjectural conclusion. But also to be considered is the degree to which considerations of comity are relevant. . . . And we must also take into account practical limitations of the certification process . . . .

---

[2] *See Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997) (noting that "[w]e, more than any other circuit, use [certification]") (citing Jona Goldschmidt, American Judicature Society, *Certification of Questions of Law: Federalism in Practice* 28 (1995)).

*State of Fla. ex rel. Shevin v. Exxon Corp.,* 526 F.2d 266, 274–75 (5th Cir. 1976) (citation and footnote omitted).[3] After considering these factors, we think certification is appropriate. Georgia law is unsettled on this narrow but important question, and an authoritative statement from its own supreme court is much better than a conjectural statement from this one.

### III. QUESTION CERTIFIED

We respectfully certify the following question of law to the Georgia Supreme Court:

> **For an insurance contract providing coverage for "direct physical loss of or damage to" a building that allows the insurer the option of paying either "the cost of repairing the building" or "the loss of value," if the insurer elects to the repair the building, must it also compensate the insured for the diminution in value of the property resulting from stigma due to its having been physically damaged?**

We do not intend our statement of the question to limit the inquiry of the Georgia Supreme Court. *See Colonial Props.*, 77 F.3d at 387. To assist the Supreme Court, we hereby order that the entire record in this case, together with the briefs of the parties, be transmitted herewith.

**QUESTION CERTIFIED.**

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

11