T.C. Memo. 2021-62

UNITED STATES TAX COURT

MONTGOMERY-ALABAMA RIVER, LLC, PARKWAY SOUTH, LLC, TAX
MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9254-19.                      Filed May 17, 2021.

Michael Todd Welty, Andrew W. Steigleder, and Kevin M. Johnson, for

petitioner.

Marc L. Caine, Mariano R. Ardaya-Beecher, Alexandra E. Nicholaides, and

Shawna A. Early, for respondent.

MEMORANDUM OPINION

LAUBER, Judge: This case involves a charitable contribution deduction

claimed by Montgomery-Alabama River, LLC (Montgomery), for a conservation

[*2] easement. The Internal Revenue Service (IRS) disallowed the deduction upon concluding that the deed of easement did not meet applicable legal requirements.[1] The governing regulation requires that the grantee receive, in the event an easement is extinguished, a proportionate share of the proceeds upon any subsequent sale of the property. Sec. 1.170A-14(g)(6)(ii), Income Tax Regs. This regulation makes an exception, however, if the applicable State law allows the donor to receive "the full proceeds from the conversion without regard to the terms of the prior perpetual conservation restriction." Ibid.

Currently before the Court is petitioner's motion that we certify to the Supreme Court of Alabama the question whether, under Alabama law, the donor (i.e., petitioner or its successor) would be entitled to the full proceeds of any sale if the easement were extinguished. Finding no ambiguity in Alabama law on this point, we will deny petitioner's motion.

## Background

The following facts are derived from the parties' pleadings, motion papers, and the exhibits and declarations attached thereto. They are stated solely for purposes of deciding petitioner's motion and not as findings of fact in this case. See

---

[1]Unless otherwise indicated, statutory references are to the Internal Revenue Code in effect at all relevant times, and paragraph references are to the paragraphs of the deed of easement. We round monetary amounts to the nearest dollar.

[*3] Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). Absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the Eleventh Circuit. See sec. 7482(b)(1)(E).

Montgomery was formed as a Georgia limited liability company in July 2014. For its short tax year beginning December 3, 2014, and ending December 31, 2014, it was treated as a partnership for Federal income tax purposes. Montgomery is subject to the TEFRA unified audit and litigation procedures, and petitioner Parkway South, LLC, is its tax matters partner.

In September 2014 Montgomery acquired, by capital contribution, 132 acres of land in Elmore County, Alabama (Property). On December 2, 2014, Montgomery River Group, LLC, an entity owned by a group of investors, purchased a 95% interest in Montgomery for $3.4 million. On December 15, 2014, Montgomery granted to the National Wild Turkey Federation Research Foundation (Foundation) a conservation easement over the Property. The deed of conservation easement (Deed) was recorded the same day.

The Deed recognizes the possibility that the easement might be extinguished at some future date. In the event the Property were sold following judicial extinguishment of the easement, paragraph 16 provides that "[t]he amount of the proceeds to which Grantee shall be entitled shall be determined in accordance with

**[\*4]** the Proceeds paragraph \* \* \*, unless state law provides otherwise." Paragraph 18, captioned "Proceeds," specifies that the Deed granted the Foundation "a real property interest, immediately vested in Grantee," and that this vested property interest entitled the Foundation to receive, in the event of an extinguishment, a specified share of any future proceeds.

Montgomery timely filed Form 1065, U.S. Return of Partnership Income, for its short taxable year ending December 31, 2014. On that return it claimed a charitable contribution deduction of $12,675,000 for its donation of the easement. Following examination of that return the IRS issued petitioner, on March 7, 2019, a notice of final partnership administrative adjustment (FPAA) disallowing the charitable contribution deduction in full. The FPAA determined that Montgomery had not shown that the requirements of section 170 were met. The FPAA alternatively determined that, if any deduction were allowable, Montgomery had not established that the fair market value of the easement exceeded $543,000.

Petitioner timely petitioned this Court for readjustment of the partnership items. The parties have filed cross-motions for partial summary judgment addressed to the "judicial extinguishment" issue. On October 30, 2020, petitioner moved that we certify to the Supreme Court of Alabama a question that, if answered in petitioner's favor, would affect the disposition of the cross-motions.

**[\*5]**                                        Discussion

A.      Standards Governing Certification

Rule 18 of the Alabama Rules of Appellate Procedure (Appellate Rules) governs the certification of questions from Federal courts.  The question certified must be "determinative of said cause" and there must be "no clear controlling precedents" in the Supreme Court of Alabama.  Ala. R. App. P. 18(a).  Only a "court of the United States" may certify a question in this manner.  Ibid.  Petitioner's motion thus presents a threshold issue as to whether the Alabama Supreme Court would deem the Tax Court to be a "court of the United States" for purposes of Appellate Rule 18.[2]

In 1969 Congress "established, under article I of the Constitution of the United States, a court of record to be known as the United States Tax Court."  Tax Reform Act of 1969, Pub. L. No. 91-172, sec. 951, 83 Stat. at 730.  By statute this Court is "not an agency of * * * the Government" but is, rather, a "court of record"

_____

[2]We have considered a similar question in other contexts.  Compare Nappi v. Commissioner, 58 T.C. 282, 284 (1972) (holding that this Court is a "court of the United States" for purposes of 5 U.S.C. sec. 551(1)(B)), with McQuiston v. Commissioner, 78 T.C. 807, 810-812 (1982) (holding that this Court is not a "court of the United States" for purposes of 28 U.S.C. sec. 451), aff'd, 711 F.2d 1064 (9th Cir. 1983).  In 1988 we certified a question to the Supreme Court of Montana.  See Grant Creek Water Works, Ltd. v. Commissioner, 91 T.C. 322 (1988).  At that time the Supreme Court of Montana allowed any "United States court" to certify a question.  Id. at 328 n.5 (quoting Mont. R. App. P. 44).

**[\*6]** under the "Constitution of the United States." Sec. 7441. Tax Court judges, like Federal District Court judges, are appointed by the President and are confirmed by the Senate. Sec. 7443(b); see 28 U.S.C. sec. 133 (2018). And Tax Court decisions, like Federal District Court decisions, are appealable to the U.S. Courts of Appeals. Sec. 7482(a)(1); see 28 U.S.C. sec. 1291 (2018). In light of these similarities, the U.S. Supreme Court has characterized this Court's "role in the federal judicial scheme [as] closely resembl[ing] those of the federal district courts." Freytag v. Commissioner, 501 U.S. 868, 891 (1991).

Appellate Rule 18 does not define "court of the United States." However, Appellate Rule 18(c) provides that certification "may be invoked by any of the federal courts upon \* \* \* motion." (Emphasis added.) This text suggests that Appellate Rule 18 would embrace a question certified by the Tax Court. See Travelers Cas. & Sur. Co. v. Ala. Gas Corp., 117 So. 3d 695, 699 (Ala. 2012) ("[A] certified question is, by definition, one that is propounded and certified to this Court by a federal court.").

Rule 51(4) of the Appellate Rules, a general definitional provision, states that "'Court of the United States' includes the United States Supreme Court, a federal court of appeals and a federal district court." (Emphasis added.) Because this Rule employs the verb "includes" rather than "means," it leaves open the possibil-

**[\*7]** ity that "Court of the United States" includes other Federal courts.[3]  And

indeed the Alabama Supreme Court has so held:  It has previously considered and

accepted questions certified by Federal bankruptcy courts.[4]  Because the Alabama

Supreme Court has interpreted Appellate Rule 18 to permit certification from

Federal bankruptcy courts, as well as from other Federal courts, we assume

arguendo that it would consider a question certified by this Court in appropriate

circumstances.

"[C]ertification of state law questions is a matter of discretion."  Royal

Capital Dev., LLC v. Md. Cas. Co., 659 F.3d 1050, 1054 (11th Cir. 2011).  A

Federal court may exercise its discretion in favor of certification where a litigant

presents a "novel, unsettled question[] of state law."  See Arizonans for Official

---

[3]Cf. Helvering v. Morgan's, Inc., 293 U.S. 121, 125 n.1 (1934) ("The terms 'means' and 'includes' are not necessarily synonymous.  * * *  The natural distinction would be that where 'means' is employed, the term and its definition are to be interchangeable equivalents, and that the verb 'includes' imports a general class, some of whose particular instances are those specified in the definition.").

[4]See Malfatti v. Bank of Am., N.A., 99 So. 3d 1221 (Ala. 2012) (accepting a question from a bankruptcy appellate panel); Heatherwood Holdings, LLC v. First Com. Bank, 61 So. 3d 1012 (Ala. 2010) (accepting a question from a Federal bankruptcy court); Pope v. Gordon, 922 So. 2d 893 (Ala. 2005) (same).  Bankruptcy courts are not "federal district court[s]," see Ala. R. App. P. 51(4), but are, rather, "unit[s] of the district court[s]," see 28 U.S.C. sec. 151 (2018).  Nor are bankruptcy appellate panels Federal "courts of appeals."  See 28 U.S.C. sec. 158(b)(1) (2018); see also In re Jeys, 202 B.R. 153 (B.A.P. 10th Cir. 1996) (holding that bankruptcy appellate panels are not Article III courts).

**[*8]** <u>English v. Arizona</u>, 520 U.S. 43, 79 (1997). Certification generally is not appropriate if there are "sufficient sources of state law . . . to allow a principled rather than [a] conjectural conclusion." <u>See</u> <u>Royal Capital Dev., LLC</u>, 659 F.3d at 1055 (quoting <u>State of Fla. ex rel. Shevin v. Exxon Corp.</u>, 526 F.2d 266, 275 (5th Cir. 1976)).

B.    <u>Analysis</u>

Section 1.170A-14(g)(6)(ii), Income Tax Regs., requires that the charitable grantee receive, in the event an easement is extinguished, a proportionate share of the proceeds upon any subsequent sale of the property. This regulation makes an exception if the applicable State law would allow the donor to retain "the full proceeds from the conversion without regard to the terms of the prior perpetual conservation restriction." <u>Ibid.</u> Petitioner requests that we certify the question "whether, under Alabama law, the * * * [Foundation] would be entitled to receive compensation in the event of a judicial extinguishment."

We decline to certify this question. In our view there exist "sufficient sources of state law" to determine that Alabama law would entitle the Foundation to receive compensation in the event of a judicial extinguishment. <u>See</u> <u>Royal Capital Dev., LLC</u>, 659 F.3d at 1055. Indeed, we have previously addressed and rejected essentially the same argument about the effect of Alabama law that

[*9] petitioner advances here.  See Sells v. Commissioner, T.C. Memo. 2021-12, at *16-*19; Smith Lake, LLC v. Commissioner, T.C. Memo. 2020-107, 120 T.C.M. (CCH) 35, 37; Hewitt v. Commissioner, T.C. Memo. 2020-89, 119 T.C.M. (CCH) 1593, 1598-1599.

As we explained in those cases, Alabama law defines a conservation easement as a "nonpossessory interest of a holder in real property."  Ala. Code sec. 35-18-1(1) (1997).  A conservation easement is thus a property right that entitles its holder to compensation in the event the property is taken by condemnation or otherwise.  See Portersville Bay Oyster Co. v. Blankenship, 275 So. 3d 124, 134 (Ala. 2018); see also Ala. Code sec. 35-18-2(e) (1997) ("A conservation easement may be condemned * * * through eminent domain in the same manner as any other property interest.").

Because Alabama law unambiguously treats conservation easements as real property interests, holders of such easements are necessarily entitled to compensation if the easement is extinguished.  See Sells, at *19 ("[W]e hold that the easement * * * donated was not a contract right but an interest in property whose holder must be compensated for its condemnation or destruction or other conversion."); Smith Lake, 120 T.C.M. (CCH) at 37 ("[T]he donor of a conservation easement would not be entitled to the full amount of the proceeds from a judicial

[*10] extinguishment under Alabama law."); Hewitt, 119 T.C.M. (CCH) at 1599 (same).  Because Alabama law is clear on this point, certification is not justified.  See Gordon v. Wells Fargo Bank, Nat'l Assoc. (In re Krieg), 951 F.3d 1299, 1301 (11th Cir. 2020) (ruling that certification was not justified where the question involved interpretation of an "unambiguous" State statute).

Petitioner errs in contending that Burma Hills Dev. Co. v. Marr, 229 So. 2d 776 (Ala. 1969), creates ambiguity.  That case involved contiguous parcels of land subject to mutual covenants restricting the lots to residential use.  Id. at 777.  The city condemned one of the lots for use as a public road, a nonresidential use.  Ibid.  The owner of the neighboring lot, relying on the restrictive covenant, demanded compensation in the condemnation proceeding.  Id. at 778.  The Alabama Supreme Court rejected that demand, holding that the neighbor had no compensable interest because the restrictive covenant created only an "equitable easement" and gave him no "property right" in the lot sought to be condemned.  Id. at 781-782.

When Burma Hills was decided in 1969, Alabama law did not distinguish conservation easements from other types of equitable interests.  But "[a]s conservation easements became popular, states enacted statutes to change this feature of common law."  Oakbrook Land Holdings, LLC v. Commissioner, T.C. Memo. 2020-54, 119 T.C.M. (CCH) 1351, 1355.  In 1997 Alabama enacted its version of

[*11] the Uniform Conservation Easement Act. That statute defines the interest of the donee of a conservation easement as the "nonpossessory interest of a holder in real property." Ala. Code sec. 35-18-1(1). Consistently with the statute, the Deed in this case explicitly grants the Foundation "a real property interest, immediately vested in Grantee at the time Grantor conveys this Conservation Easement to Grantee." Because Alabama law now treats conservation easements as property rights, the Foundation, as the holder of a conservation easement, would be entitled to compensation in an Alabama condemnation proceeding "in the same manner as any other [holder of a] property interest." See Ala. Code sec. 35-18-2(e).

While acknowledging that Alabama law currently "permits condemnation" of conservation easements, petitioner urges that owners of such easements would not be entitled to compensation in a condemnation proceeding because the statute "remained silent" on that point. This argument does not pass the straight-face test. The statute expressly provides that the holder of a conservation easement owns the "interest of a holder in real property." Ala. Code sec. 35-18-1(1). Because a conservation easement is a real property interest, it may be condemned "in the same manner as any other property interest." Ala. Code sec. 35-18-2(e). The Alabama Constitution guarantees that holders of real property interests must receive "just compensation" if their property is condemned. Ala. Const. art. I, sec. 23. There

**[*12]** was no need for the Alabama legislature, when adopting the Uniform

Conservation Easement Act, to reaffirm this constitutional command.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.